The Honorable Stanley A. Bastian

William D. Pickett, WSBA #27867
THE PICKETT LAW FIRM
917 Triple Crown Way, Ste. 100
Yakima, Washington 98908
Tel: 509-972-1825
bill@wpickett-law.com
*Attorney for Plaintiff*

Luan T. Le, *pro hac vice*
Law Offices of Luan T. Le
1190 S. Bascom Ave, Suite 213
San Jose, CA 95128
Tel: 408-247-4715
Email: ledowningllp@gmail.com
*Co-counsel for Plaintiff*

Seth W. Wiener, *pro hac vice*
Law Offices of Seth W. Wiener
609 Karina Court
San Ramon, CA 94582
Tel: 925-487-5607
Email: seth@sethwienerlaw.com
*Co-counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEMETRIOS VORGIAS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COMMUNITY HEALTH OF CENTRAL WASHINGTON,<br><br>　　　　Defendant. | **Case No.: 1:21-cv-03013-SAB**<br><br>**PLAINTIFF DEMETRIOS VORGIAS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　January 25, 2022<br>WITH ORAL ARGUMENT |

Opposition to Defendant's Motion
for Summary Judgment

1

## I. INTRODUCTION

Plaintiff Demetrios Vorgias ("Dr. Vorgias") has brought the instant lawsuit against Defendant Central Health of Central Washington ("CHCW") for terminating his employment in CHCW's Central Washington Family Medicine Residency Program in violation of the Americans with Disabilities Act ("ADA"), the Washington Law Against Discrimination ("WLAD"), and the parties' contractual agreement. In an effort to avoid liability for its discriminatory acts and contractual breach, CHCW has moved for summary judgment based on its contentions that: (1) CHCW was unaware of Dr. Vorgias' disability; (2) Dr. Vorgias was unable to perform the essential functions of his job; and (3) Dr. Vorgias never requested any reasonable accommodation. There are factual disputes on each of these issues, and the Court should deny CHCW's Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

See Plaintiff's LCivR 56 Statement of Material Facts in Dispute.

## III. LEGAL ARGUMENT

### A. Standard on Motion for Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that

party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B. Plaintiff Has a Valid Cause of Action for Wrongful Termination in Violation of the ADA and WLAD

The Complaint's First Cause of Action for Violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* and Second Cause of the Action for Violation of the Washington Law Against Discrimination both allege that "CHCW discriminated against Plaintiff by terminating his employment on the basis of his disabilities …" ECF. No. 1, ¶¶ 24, 26.

To establish a prima facie case of employment discrimination under the ADA, a plaintiff must prove three elements: (1) the plaintiff is disabled within the meaning of the ADA; (2) the plaintiff is a qualified individual able to perform the essential functions of the job, either with or without reasonable accommodations; and (3) his employer terminated him because of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). Similarly, under the WLAD, a claimant in an employment disability discrimination by showing that he was: (1) disabled; (2) subject to an adverse employment action; (3) doing satisfactory work; and (4) discharged under circumstances that raise a reasonable inference of unlawful discrimination. *Callahan v. Walla Walla Housing Authority*, 126 Wn. App. 812, 819-820, 110 P.3d 782 (2005); *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 488, 84 P.3d 1231 (2004).

### 1. **CHCW Was Aware that Dr. Vorgias Was Suffering from a Mental Health Disability before they terminated his employment.**

CHCW does not dispute that Dr. Vorgias qualifies as disabled because he has a "mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1); *see also Coons v. Sec'y of U.S. Dept. of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004). Specifically, Dr. Vorgias' anxiety qualifies as a mental impairment under the ADA. *Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1088 (9th Cir. 2001) ("[S]tress and depression can be considered mental impairments ... under the ADA.") (citations omitted), *cert. denied,* 534 U.S. 888, 122 S. Ct. 201, 151 L. Ed. 2d 142 (2001). Further, Dr. Vorgias' mental impairments substantially limit a major life activity – working. *See* 29 C.F.R. § 1630.2(i) (defining "working" as a "major life activity"); *see also Sommers v. City of Santa Clara,* 516 F. Supp. 3d 967, 989 (N.D. Cal. 2021) ("Working qualifies as a major life activity under the ADA.").

CHCW spuriously claims that it was not aware of Dr. Vorgias' mental impairment, and "cannot have discriminated based on a condition of which it was wholly unaware." Doc. 37, p. 6:3-4. There are, however, triable issues of facts as to whether CHCW was aware of Dr. Vorgias' anxiety. Throughout Dr. Vorgias' tenure at CHCW, numerous physicians noted Dr. Vorgias' anxiety.

CHCW was admittedly, "wondering if there was any mental health impairments or any underlying conditions" that were preventing Dr. Vorgias from succeeding in his

Opposition to Defendant's Motion
for Summary Judgment

5

residency.  Decl. of Counsel Pickett, Ex. B (Powers Dep.) 52:7-9 and 52:16-21.  As such, Dr. Vorgias was referred to the CARED Committee.

The CHCW CARED Committee aims to provide early identification and intervention for residents in difficulty through data collection and development of personalized improvement plans.  The overarching goal of this committee is to ensure residents meet accreditation goals without receiving formal citations and/or delayed time to graduation.  Therefore, the committee seeks to prevent and/or correct progression of problems in residency."  Decl. of Counsel Pickett, Ex. D, *Plaintiff's Initial Disclosures, Resident Handbook, 4/2019, p.39*.  The fact that Plaintiff was referred to the CARED Committee, in itself, indicates he was struggling in the program and CHCW knew it.

It is also undisputed that initial CARED Committee notes/records confirm that "anxiety" was affecting Dr. Vorgias.  As result, the CARED Committee requested Dr. David Bauman, Psy.D., a Licensed Psychologist and Behavioral Health Consultant and Faculty Consultant with Central Washington Family Medicine Residency Program shadow Dr. Vorgias.  On 10/31/2018, Dr. Bauman noted in part, Dr. Vorgias appeared to be aware of his "current struggles" and that his "struggles" have been "weighing on him."  Dr. Bauman further noted that Dr. Vorgias appeared to be "overwhelmed" at times.

Based on CHCW's knowledge of Dr. Vorgias' anxiety, it issued a Consequential Citation to him on January 23, 2019 that directed to "receive an evaluation by Washington Physician Health Program, in person, in Seattle, to determine your fitness to practice in residency."  The CARED committee consequential citation included instructions to Plaintiff Vorgias that, "You will receive an evaluation by Washington Physician Health Program (WPHP), in person, in Seattle.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), Ex.8, p.74.

Additionally, on 02/13/2019, Dr. Katina Rue, requested CHCW get a neuropsych eval on Dr. Vorgias, as soon as possible "asap."  Decl. of Counsel Pickett, Ex. C, (Rue Dep.), Ex.10.

Dr. Moss from WPHP contacted Dr. Powers on 2/15/19 advising that Dr. Vorgias was being referred for additional evaluation by an outside provider to rule out an underlying medical condition that could affect Dr. Vorgias' ability to practice, and once that was completed WPHP would be notifying Dr. Powers with any further recommendations.  Decl. of Vorgias, p.3, ¶2, Ex. 5.

The neuropsychological assessment took place on April 3, 2019.  Dr. Vorgias was diagnosed with Generalized Anxiety Disorder "GAD" and Attention-Deficit Hyperactivity Disorder "ADHD."  CHCW received a report from the WPHP on April 19, 2019 that the neuropsychological evaluation/assessment had been performed, and

Opposition to Defendant's Motion
for Summary Judgment

7

that Dr. Vorgias was being enrolled in a monitoring program due to underlying medical conditions. Decl. of Counsel Pickett, Ex. B, (Powers Dep.), p.68:14-25 and p.69:1-3.

Additionally, according to interim program director Micahlyn Powers, even before learning that the neuropsychological evaluation had been completed, "We were wondering if there was an underlying condition," and if there were any mental health impairments or any underlying conditions. Decl. of Counsel Pickett, Ex. B, (Powers Dep.), p.52:7-8 and p.52:16-21.

In addition, on April 23, 2019 Dr. Midhuna Papazian described that during an evaluation of Dr. Vorgias that "he got *really anxious*" and "he is *extremely anxious*". Dr. Papazian also claimed in the same report that, "I did ask him to talk about COPD dx and management at didactics and I think he did a fine job with it even though he was *really nervous* to do so." Decl. of Counsel Pickett, Ex. C, (Rue Dep.), Ex.15.

Finally, on April 23, 2019 Dr. Nora Kirschner also reported that in her own observations regarding Dr. Vorgias, "*Perhaps the fundamental knowledge is there but masked by anxiety.*" Decl. of Counsel Pickett, Ex. C, (Rue Dep.), Ex.15.

Accordingly, there is an abundance of evidence to support Plaintiff's claim that CHCW was suffering a mental health disability before terminating his employment.

### 2. Dr. Vorgias Was a Qualified Individual

Contrary to CHCW's Motion for Summary Judgment, Dr. Vorgias was a "qualified individual" within the meaning of the ADA. "The term 'qualified

individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" 42 U.S.C. § 12111(8); *see also Smith v. Clark County Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

Here, Dr. Whitmer has opined that Dr. Vorgias' "academic grades and licensing exams demonstrate the intellectual and cognitive functioning to excel." ECF No. 35-1, p. 33. Further, Dr. Vorgias met performance standards when he was mentored and received appropriate guidance and support. *Id.* Dr. Whitmer has concluded "Dr. Vorgias is highly functional and capable of finishing out a 3-year medical residency if he is provided normal supportive supervision." *Id.*, p. 31.

Additionally, in 2018, Dr. Tiffany Mark stated about Dr. Vorgias, "*Overall, I do trust his medical knowledge, but I worry about him getting documentation done in a timely and complete manner.* Hill Decl., ¶4, Ex.2.

It is undisputed that the CARED committee meeting notes indicate that, "there is verbal and documented positive and negative feedback regarding his [Dr. Vorgias'] performance." According to Dr. David Bauman, Dr. Vorgias appeared to be very hard working. *Defendant's Initial Disclosures, p.56.*

Additionally, there are no immoral, unethical, illegal, or otherwise egregious actions or behaviors Dr. Vorgias was cited for or that contributed to his termination. Dr. Vorgias was assessed by many as a well-loved doctor by patients and peers and

staff. There were no immoral, unethical, or otherwise egregious actions Dr. Vorgias displayed that justified termination. ECF 35 & 35-1, Decl. of Scott Whitmer, Psy.D., Ex. A, p.29.

Finally, Dr. Powers summarized Dr. Vorgias' performance during his residency training as "Excellent," "Good," and "Fair." Dr. Powers did not summarize Dr. Vorgias as "Poor" in any training categories. Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex. 4.

Based on the foregoing, there are triable issues of fact as to whether Dr. Vorgias was capable of performing the essential functions of the medical residency position.

### 3. CHCW Terminated Dr. Vorgias Because of Conduct Resulting From His Disabilities

Lastly, CHCW claim to have terminated Dr. Vorgias because of his failure to pass his FMS rotations and purported lack of medical knowledge. These are pretext, as demonstrated by Dr. Whitmer's testimony that Dr. Vorgias "demonstrated traits and skills with patients, peers, and supervisors to be a competent doctor." Moreover, to the extent that Dr. Vorgias' mental impairment did impair his performance, such performance deficiencies are considered to be part of Dr. Vorgias' disability, rather than a separate basis for termination. *See Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128, 1139-1140 (9th Cir. 2001) ("For purposes of the ADA, with a few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination. The link between the disability and

termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.") (citation omitted); *see also Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 875 (9th Cir. 1989) (there was a sufficient causal connection between the plaintiff's disability and termination where the plaintiff employee was discharged for excessive absenteeism caused by disability).  Resultantly, there are triable issues of fact as to whether Dr. Vorgias' termination was due to his disabilities.

### C. Plaintiff Has a Valid Cause of Action for Failure to Accommodate in Violation of the ADA and WLAD

The Complaint also alleges that CHCW discriminated against Dr. Vorgias in violation of the ADA and WLAD by having "failed to engage in the interactive process, and failed to reasonably accommodate Plaintiff's disabilities." ECF No. 1, ¶¶ 24, 26.

CHCW's Motion for Summary Judgment does not dispute that CHCW failed to engage in the interactive process.  More importantly, the fact that CHCW failed and/or refused to wait and review the neuropsychological report from an evaluation the CARED Committed required, demonstrates failure to engage in the interactive process.  Hence, there are triable issues on that portion of Dr. Vorgias' ADA and WLAD claims.

There are also triable issues on Dr. Vorgias' failure to accommodate claim.  "To establish a prima facie case for disability discrimination under a failure to reasonably accommodate theory, an employee must prove that (1) she had a sensory, mental, or

physical abnormality that substantially limited her ability to perform her job; (2) she was qualified to perform the essential functions of the job in question; (3) she gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 489, 84 P.3d 1231, 1236-1237 (2004). '

The accommodations that were included in Dr. Cornett's report are simple, easy to apply, and reasonable.  Specifically proposed were, 1) minimal assistance with time for Cognitive Behavior Therapy, 2) additional supervision, and 3) minimal assistance with time for cognitive speech therapy. Any one of the proposed accommodations would have helped Dr. Vorgias to manage anxiety and enhance interpersonal sensitivity.  Decl. of Vorgias, Exhibit 20.

CHCW's Motion for Summary Judgment only challenges the third and fourth prongs of the failure to accommodate claim.  As noted above, there are triable issues as to both prongs.

        **1.**      <u>**CHCW Had Notice of Dr. Vorgias' Disabilities**</u>

As discussed in Section B.1 above, CHCW had abundant notice of Dr. Vorgias' mental health disabilities, including GAD and ADHD.

Opposition to Defendant's Motion
for Summary Judgment

12

### 2. CHCW Failed to Reasonably Accommodate Dr. Vorgias' Disabilities

CHCW's Motion for Summary Judgment attacks a red herring in arguing that it "was not required to remove essential job functions as an accommodation." ECF No. 38, p. 15:10. Dr. Vorgias never requested the removal of any essential job functions as an accommodation. One accommodation that was made on behalf of Dr. Vorgas was "for an enrollment into a monitoring agreement for an underlying medical condition." Doc. 36-2, Ex. B, p. 15:18-22. The CHCW has admitted that such a monitoring program would have been a reasonable accommodation. *Id*, p. 17:18-23 ("The program would have been supportive of him being enrolled in this monitoring agreement …"). The CHCW does not dispute that it did not provide this reasonable accommodation, and that it instead terminated Dr. Vorgias' employment on May 1, 2019.

### D. Plaintiff Has a Valid Cause of Action for Breach of Contract

Plaintiff's Third Cause of Action for Breach of Contract is based on the fact that "CHCW breached the Resident Contract in Family Medicine by terminating Plaintiff on April 24, 2019, without providing 30 day written notice to Plaintiff." ECF. No. 1, ¶ 30.

CHCW's Motion for Summary Judgment admits that "CHCW technically breached the contract … by terminating [Dr. Vorgias] without providing 30 days' written notice." ECF No. 38, pp. 17:19-20, 18:7-8. Nonetheless, CHCW seeks summary judgment on the Breach of Contract claim based on its contention that

"Plaintiff suffered no resulting damage" because "[a]fter plaintiff was terminated, CHCW paid his entire salary and benefits for the 30-day notice period under the contract."  ECF No. 38, p. 18:11-12.

CHCW cites no Washington or Ninth Circuit law supporting its contention that its payment of salary and benefits for the 30-day notice provision excused its breach of the Resident Contract in Family Medicine, nor did it. *See Christensen v. Kroger,* 2011 U.S. Dist. LEXIS 16754, at *7 (D. Or. Feb. 13, 2011) (stated that defendant employer's termination of employee "would have breached the notice provision if he terminated the relationship without notice, which may have permitted [plaintiff employee] to recover civil damages for breach …").  Notably, the Resident Contract in Family Medicine did not permit payment in lieu of notice.  Decl. of Counsel Pickett, Ex. A (Vorgias Dep.), Exhibit 1 (Resident Contract In Family Medicine, ¶1.

Further, Dr. Vorgias was damaged by the breach of the 30-day notice provision as the sudden termination made it impossible for him to obtain another residency, and those difficulties would have been alleviated had he been given the 30-day notice required by the Resident Contract in Family Medicine.  Decl. of Counsel Pickett, Ex. A (Vorgias Dep.), Exhibit 1 (Resident Contract In Family Medicine, ¶1

Based on the foregoing, there are triable issues on Dr. Vorgias' Third Cause of Action for Breach of Contract.

### E. The Motion for Summary Judgment Does Not Address Dr. Vorgias' Retaliation Claim

Lastly, CHCW's Motion for Summary Judgment does not address Dr. Vorgias' retaliation claim under the WLAD.

To prove retaliation under RCW 49.60 Plaintiff must establish that 1) he engaged in protected activity, 2) Defendant took an adverse employment action, and 3) there is a "causal link" between the protected activity and the adverse action. *Hines v. Todd Pac. Shipyards Corp.,* 127 Wn. App. 356, 374 n.22, 112 P.3d 522 (2005). As set forth in Dr. Vorgias' Motion for Partial Summary Judgment, Dr. Vorgias has shown that (1) he engaged in protected activity regarding his participation in a neuropsychological examination that was demanded by CHCW, and (2) shortly thereafter CHCW took adverse employment action, and (3) Dr. Vorgias' engagement in protected activity prompted CHCW's adverse action. *Estevez v. Faculty Club of the Univ. of Wash.,* 129 Wash. App. 774, 797, 120 P.3d 579 (2005).

### VI. CONCLUSION

For the foregoing reasons, the Court should deny CHCW's Motion for Summary Judgment.

Respectfully submitted, December 22, 2021.

| | |
|---|---|
| THE PICKETT LAW FIRM<br>By: s/William Pickett<br>William D. Pickett, WSBA #27867<br>917 Triple Crown Way, Suite 100<br>Yakima, WA 98908<br>bill@wpickett-law.com<br>*Attorney for Plaintiff* | LAW OFFICES OF SETH W. WIENER<br>By: s/Seth W. Wiener<br>Seth W. Wiener, CSBA #203747<br>609 Karina Court<br>San Ramon, CA 94582<br>Email: sethwiener@yahoo.com<br>*Attorney for Plaintiff – Pro Hac Vice* |
| LAW OFFICES OF LUAN T. LE<br>By: s/Luan Le<br>Luan T. Le. CSBA #171029<br>1190 S Bascom Avenue, Suite 213<br>San Jose, CA 95128<br>Email: ledowningllp@gmail.com<br>*Attorney for Plaintiff – Pro Hac Vice* | |

# CERTIFICATE OF SERVICE

I hereby certify that on December 22nd, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Luan T. Le, *pro hac vice*
Law Offices of Luan T. Le
1190 S. Bascom Ave, Suite 213
San Jose, CA 95128
Tel: 408-247-4715
Email: ledowningllp@gmail.com
*Co-counsel for Plaintiff*

Seth W. Wiener, *pro hac vice*
Law Offices of Seth W. Wiener
609 Karina Court
San Ramon, CA 94582
Tel: 925-487-5607
Email: seth@sethwienerlaw.com
*Co-counsel for Plaintiff*

Catharine Morisset, WSBA #29682
Nate Bailey, WSBA #40756
Fisher & Phillips, LLP
1201 Third Avenue, Ste. 2750
Seattle, Washington 98101
Tel: 206-682-2308
Email: cmorisset@fisherphillips.com
        nbailey@fisherphillips.com
*Attorneys for Defendant*

**DATED** at Yakima, Washington, this 22nd day of December, 2021.


By:  s/ William D. Pickett
       William D. Pickett, WSBA NO. 27867