The Honorable Stanley A. Bastian

William D. Pickett, WSBA #27867
THE PICKETT LAW FIRM
917 Triple Crown Way, Ste. 100
Yakima, Washington 98908
Tel: 509-972-1825
bill@wpickett-law.com
*Attorney for Plaintiff*

Luan T. Le, *pro hac vice*
Law Offices of Luan T. Le
1190 S. Bascom Ave, Suite 213
San Jose, CA 95128
Tel: 408-247-4715
Email: ledowningllp@gmail.com
*Co-counsel for Plaintiff*

Mr. Seth W. Wiener, *pro hac vice*
Law Offices of Seth W. Wiener
609 Karina Court
San Ramon, CA 94582
Tel: 925-487-5607
Email: seth@sethwienerlaw.com
*Co-counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEMETRIOS VORGIAS,<br><br>                Plaintiff,<br><br>v.<br><br>COMMUNITY HEALTH OF CENTRAL WASHINGTON,<br><br>             Defendant. | **Case No.: 1:21-cv-03013-SAB**<br><br>**PLAINTIFF DEMETRIOS VORGIAS' LCivR 56 STATEMENT OF *DISPUTED* MATERIAL FACTS** |

Pursuant to LCivR 56 (c) (1) (B), plaintiff hereby submits the following disputed material facts precluding defendant's motion for summary judgment.

1.     It is undisputed that Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) in 2008 or 2009.

2.     It is undisputed that Plaintiff graduated from medical school in 2016.

3.     It is undisputed that medical residents are placed into a residency program through a matching process run by the National Resident Matching Program (NRMP). Plaintiff objects to the remainder of ¶3 of Defendant's Statement of Material Facts as (i) Hearsay.

4.     It is undisputed that each applicant ranks the residency programs in the order of their preference, and each residency program does the same with applicants. Plaintiff objects to the remainder ¶4 of Defendant's Statement of Material Facts as (i) unsupported by the deposition testimony proposed and as (ii) Hearsay.

5.     Plaintiff objects to ¶5 of Defendant's Statement of Material Facts as (i) unsupported by the deposition testimony proposed by Defendant. Specifically, Plaintiff Vorgias testified that "I don't know" and "I don't know how programs . . . .", "I am not sure about all the guidelines. . . ." Decl. of Counsel Pickett in opposition to Defendant's motion for summary judgment, Ex. A (Vorgias Dep.), p. 33, ¶5-8.

6.     Plaintiff objects to ¶6 of Defendant's Statement of Material Facts as (i) Hearsay. Plaintiff further objects as the website identified in ¶6 of Defendant's Statement of Material Facts was not produced or provided by Defendant CHCW to Plaintiff Vorgias during initial disclosures.

7.     Plaintiff objects to ¶7 of Defendant's Statement of Material Facts as (i) Hearsay.  Plaintiff further objects as the website identified in ¶7 Defendant's Statement of Material Facts was not produced or provided by Defendant CHCW to Plaintiff Vorgias during initial disclosures.

8.     It is undisputed that Plaintiff Vorgias participated in the match process in 2016, but was not selected.  Defendant fails to mention that Plaintiff was not selected during the match process due to a late submission of his application materials because he took a leave of absence from medical school to spend months assisting family members following the deaths of both his father-in-law and father in 2015.  Decl. of Counsel Pickett in opposition to Defendant's motion for summary judgment, Ex. A (Vorgias Dep.), p.28, ¶15-25.

9.     It is undisputed that Plaintiff Vorgias participated in the match process in 2017 but was not selected.

10.     It is undisputed that Plaintiff Vorgias participated in the match process in 2018 and was matched with Defendant CHCW.

11.     It is undisputed that Plaintiff Vorgias signed a first year Resident Contract in Family Medicine on March 28, 2018.

12.     It is undisputed that the term of the contract was June 25, 2018 through June 24, 2019.

13.     Disputed as stated by Defendant.  The terms of the Resident Contract In Family Medicine states in pertinent part, "It is agreed that intention to terminate this contact by either party be accompanied by a 30 day written notice."  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), Ex.1, ¶1.  Plaintiff Vorgias was NOT provided 30 days written notice of *intention* to terminate the contract by Defendant CHCW.  He was simply called in from "rounding" on his patients, immediately relieved of duties, and fired.  Decl. of Counsel Pickett, Ex. A (Vorgias Dep.), p.65:13-16; Decl. of Counsel Pickett, Ex. E, Defendant's Initial Disclosures, p.87-88 (No notice of intention to terminate as Plaintiff was relieved of duties immediately).

14.     Disputed as stated by Defendant.  The terms of the Resident Contract In Family Medicine states in pertinent part, "Extended personal leave *is* granted at the discretion of the Program Director for *compelling* personal reasons."  Decl. of Counsel Pickett, Ex. A (Vorgias Dep.), Ex.1, ¶7, emphasis added.  Additionally, the Central Washington Family Medicine Residency Program Resident Handbook, 04/2019, also discusses extended leave.  According to the Resident Handbook, extended personal leave *is* granted at the discretion of the Program Director for *compelling* personal reasons.   Decl. of Counsel Pickett, Ex. D, *Plaintiff's Initial Disclosures, Central Washington Family Medicine Residency Program Resident Handbook, 4/2019, p.22.*

Additionally, the Resident Contract and 04/2019 Resident Handbook both state, "Eligible resident have a *right* under FMLA for up to 12 weeks of leave in a 12-month period for the reasons listed below, in part:

• A serious health condition that renders the resident unable to perform the essential functions of his/her job.  Decl. of Counsel Pickett, Ex. A (Vorgias Dep.), Ex.1, ¶8, and Ex. D, *Plaintiff's Initial Disclosures, Central Washington Family Medicine Residency Program Resident Handbook, 4/2019, p.23.*

Additionally, leaves of absence in excess of paid time off (PTO) granted in each year of training must be made up prior to graduation.  The date of completion of training will be *extended* commensurate with the excess time taken.  Decl. of Counsel Pickett, Ex. D, *Plaintiff's Initial Disclosures, Central Washington Family Medicine Residency Program Resident Handbook, 4/2019, p.22.*

15.    Disputed as stated by Defendants.  Defendant CHCW did not provide Plaintiff Vorgias with any leave of absence despite referring him to the Washington Physician Health Program (WPHP) for evaluation, and being specifically informed that he [Vorgias] was enrolled in a monitoring program due to an underlying medical condition.  Decl. of Pickett Ex. B, (Powers Dep.) at 41:1-9.  Furthermore, Defendant CHCW claims to always review the reports of WPHP and follow the recommendations if it's reasonable within the resources of the program to do that.  Decl. of Counsel Pickett, Ex. B (Powers Dep.) at 44:3-7 and 44:18-22.  Furthermore, Defendant CHCW

knew that Plaintiff Vorgias had undergone a neuropsych evaluation. Decl. of Counsel Pickett, Ex. B (Powers Dep.), at 45:6-10 and 68:14-25. Furthermore, regarding Plaintiff Vorgias, CHCW was admittedly, "wondering if there was any mental health impairments or any underlying conditions" that were preventing Dr. Vorgias from succeeding in his residency. Decl. of Counsel Pickett, Ex. B (Powers Dep.) 52:7-9 and 52:16-21. CWCH would have reviewed any accommodations or recommendations from WPHP to see if they could have been reasonably performed within the program. Decl. of Pickett, Ex. B, (Powers Dep.) p. 53:14-17. Furthermore On April 19, 2019, Defendant CHCW was informed by WPHP [Cynthia Morales] that there were recommendations for an enrollment into a monitoring agreement for an underlying medical condition. Decl. of Counsel Pickett, Ex. B, (Powers Dep.) p. 58:18-22. Defendant CHCW [Interim Program Director, Michalyn Powers] did not specifically ask WPHP [Cynthia Morales] whether underlying medical conditions were impacting Plaintiff Vorgias' performance in the residency program. Decl. of Counsel Pickett, Ex. B, (Powers Dep.) p. 69:19-25 and p. 70:8-14. CHCW knew that specific details concerning Plaintiff Vorgias' underlying medical conditions would be put in writing and received in an official capacity. Decl. of Counsel Pickett, Ex. B (Powers Dep.), p. 70:3-7. CHCW knew10 days prior to their termination of Plaintiff Vorgias that he suffered from an underlying medical condition for which he was being enrolled in a monitoring program with WPHP. Decl. of Counsel Pickett, Ex. B, (Powers Dep.) p.

88:3-11. Defendant CHCW took no steps to consult with Plaintiff Vorgias before terminating his employment, despite having been informed a full ten days before terminating that Plaintiff Vorgias was being enrolled in a monitoring program for an underlying medical condition.  Decl. of Counsel Pickett, Ex. B, (Powers Dep.) p. 88:12-16. Defendant CHCW's human resources did no outreach to Plaintiff Vorgias prior to his termination to consult with him regarding his underlying medical conditions.  Decl. of Counsel Pickett, Ex. B, (Powers Dep.) p. 88:17-25.  No CHCW human resources personnel ever tried to get to the bottom of whether Plaintiff Vorgias' underlying medical conditions were, in fact, impairing his ability to succeed and perform in the residency program, despite knowing such conditions were actively being monitored. Decl. of Counsel Pickett, Ex. B, (Powers Dep.) p. 89:21-25 and p. 90:1-5.

16.  It is undisputed that the Central Washington Family Medicine Residency Program Resident Handbook, 6/2016, is attached as Exhibit A, to the Decl. of Nate Bailey in support of defendant's motion for summary judgment, and states in part, "At the beginning of the R1 year, each Resident is assigned a Faculty Advisor."  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), Ex. 5.  However, the 6/2016 Central Washington Family Medicine Residency Program Resident Handbook defendant has submitted to the court is not the applicable Resident Handbook at the time of Plaintiff's termination in June of 2019.  The applicable Resident Handbook is:  Central Washington Family Medicine Residency Program Resident Handbook, 4/2019.  Decl.

of Counsel Pickett, Ex. D, *Plaintiff's Initial Disclosures, Central Washington Family Medicine Residency Program Resident Handbook, 4/2019, p.7-46.*

17.    Disputed as stated by Defendant.  The applicable Central Washington Family Medicine Residency Program Resident Handbook 4/2019, states in part, "Advisor Responsibilities"- The advisor review information from all areas evaluated, and develops a coherent summary of formative and evaluative comments for discussion with the Resident.  The advisor prepares a summary of the evaluation meeting for the Resident's file.  Decl. of Counsel Pickett, Ex. D, *Plaintiff's Initial Disclosures, Central Washington Family Medicine Residency Program Resident Handbook, 4/2019, p.3*6. Additionally, the 4/2019 Resident Handbook states in part, "If a Resident fails a rotation or does not correct a consequential citation within the specified time, he/she will be placed on probation.  *Further testing, evaluation by professionals, tutorials or outside therapy/treatment may be required.  Expectations for achievement and the timeline for reevaluation will be determined.  All failed rotations must be repeated and the Resident's advancement to the next level of training delayed a commensurate amount.  Likewise, the period of training will be extended to meet the completion of training requirements*."  Decl. of Counsel Pickett, Ex. D, *Plaintiff's Initial Disclosures, Resident Handbook, 4/2019, p.45.*  Additionally, "If termination is for lack of academic progress, the Resident will have progressed through several stages of remediation and termination will be a *last resort* after those steps have failed."  Decl. of Counsel Pickett,

Ex. D, *Plaintiff's Initial Disclosures, Resident Handbook, 4/2019, p.45.* Terminating Plaintiff Vorgias without ever reviewing or discussing the written report, findings, and requested accommodations of WPHP does not follow the stages of the remediation process that is required in the 4/2019 Resident Handbook.

18.    Disputed as stated by Defendant.  The Central Washington Family Medicine Residency Program Resident Handbook, 4/2019 states in part, "The Resident and advisor may request a change of advisor/advisee once a year if there are conflicts or discomfort with the relationship.  The proposed change must be discussed with the Program Director/DIO.  The Program Director/DIO retains the right to make an assignment if an equitable solution cannot be worked out.  Decl. of Counsel Pickett, Ex. D*., Plaintiff's Initial Disclosures, Resident Handbook, 4/2019, p.36.*

19.    It is undisputed that Caitlin Hill, was a faculty advisor for Plaintiff Vorgias.

20.    Disputed as stated by Defendant.  The 04/2019, Central Washington Family Medicine Residency Program Resident Handbook states in part, "Residents are subject to continuous performance evaluation, with regard to the seven core competencies:  **patient care, medical knowledge, practice-based learning and improvement, interpersonal and communication skills, professionalism, systems-based practice, and osteopathic philosophy and osteopathic manipulative medicine.**"  Decl. of Counsel Pickett, Ex. D*, Plaintiff's Initial Disclosures, Resident*

*Handbook, 4/2019, p.35.* The 04/2019 Resident Handbook further states, "**Equal Opportunity** - The Central Washington Family Medicine Residency Program (CWFMR) maintains a policy of nondiscrimination with applicants and Residents. No aspect of the application process, or residency training will be influenced in any manner by race, color, religion, sex, age, national origin, *physical or mental disability, or any other basis prohibited by statute.* Further, CWFMR will *reasonably accommodate persons with mental or physical disabilities* as long as the accommodation doesn't cause the Program undue hardship or negatively impact the provision of comprehensive patient care." Decl. of Counsel Pickett, Ex. D*, Plaintiff's Initial Disclosures, Resident Handbook, 4/2019, p.15.*

21.    It is undisputed that the osteopathy-related core competency did not apply to Plaintiff Vorgias because he was a M.D. resident, not a D.O. resident.

22.    Disputed as stated by Defendant. The goals of the Central Washington Family Medical Residency "CWFMR" Resident evaluation system are:

1.    Assure the safety of patients.

2.    Provide relevant, fair, useful, and accurate feedback about Resident progress from appropriate sources including CWFMR faculty and community preceptors, encounter/billing form data, inpatient and outpatient supervisors, and results of national Resident In-Training Examinations.

3.      Measure Resident and residency program outcomes to determine if educational objectives are met.

4.      Assess Resident involvement and investment in establishing personal learning goals, self-assessment of educational progress, and attainment of goals.

5.      Document progress and competence for purposes of advancement and graduation, compliance with residency program requirements for accreditation, references for future work applications and determination of privileges.

6.      Obtain information that will contribute to the maintenance and continuous improvement of educational opportunities and rotations.

7.      Utilize the ACGME and ABFM Family Medicine Milestone Project.  The milestones are developmentally-based family medicine-specific attributes that family medicine residents ca be expected to demonstrate as they progress through their program.

Resident competence will be evaluated in a variety of ways including direct observation, outcomes assessment, patient feedback and written examination.

Upon evaluating residents, if remediation is identified, advisor will follow Remediation policy.  Please see Remediation policy for details.  Decl. of Counsel Pickett, Ex. D, *Plaintiff's Initial Disclosures, Program Resident Handbook, 4/2019, p.35.*

23.     Disputed as stated by Defendants.  The Resident Handbook notes, "There are three advancement steps:

R1 to R2, R2 to R3, and R3 to graduation.  *Id*. at 35 and 36.

Additionally, "the decision whether a Resident passes a rotation or other educational element of the required curriculum is determined by the Program Director, in consultation with the advisor, or faculty and educators, and using all objective subjective information that is appropriate to the assessment of the Resident's performance in the setting.  Evaluation by attendings and others is advisory to the Program Director.  Failure may result from deficiencies in cognition, clinical performance, technical skills, attendance, and/or attitudinal objectives.  If remediation is required, the resident will be provided with the remediation policy and will have a formal meeting with his/her advisor to develop a plan.  Please see Remediation policy for details.  The advisor also has the option of making a CARED referral.  Please see below CARED committed description and workflow.  *Id*. at p.38.

24.     Disputed as stated by Defendant.  The 4/2019 Resident Handbook states, "For advancement to the next level, acceptable progress meeting milestones in the seven core competencies needs to be documented.  Additionally, the Resident must be judged competent to supervise others (R1's and students) and to act with limited independence."  *Id*. at p.36.

25.     Disputed.  Dr. Vorgias was not acting in an unsafe manner.  Decl. of Vorgias in opposition to Defendant's motion for summary judgment, p.2, ¶2.

Additionally, Plaintiff objects as the Hill Decl., ¶ 3, Ex. 1, contain hearsay.

26.     Disputed.  The Hill Decl., ¶4, Ex. 2 alleges that in 2018 Dr. Tiffany Mark emailed concerns after working with Dr. Vorgias.  Dr. Vorgias is not identified by name in the email.  Additionally, Defendants neglects to identify that the email indicates, "*Overall, I do trust his medical knowledge, but I worry about him getting documentation done in a timely and complete manner.*  This is difficult, especially on OB, as it puts more work on his fellow residents.  I don't think he is prepared for FMS without close guidance."  Hill Decl., ¶4, Ex.2.

Additionally, Plaintiff objects as the Hill Decl., ¶4, Ex.2, contains hearsay.

27.     Disputed as stated by Defendant.  The CARED "committee aims to provide early identification and intervention for residents in difficulty through data collection and development of personalized improvement plans.  The overarching goal of this committee is to ensure residents meet accreditation goals without receiving formal citations and/or delayed time to graduation.  Therefore, the committee seeks to prevent and/or correct progression of problems in residency."  Decl. of Counsel Pickett, Ex. D, *Plaintiff's Initial Disclosures, Resident Handbook, 4/2019, p.39.*

28.     Undisputed.  Additionally, Dr. Vorgias also told, Dr. Miller, Dr. Pearson, and Dr. McCloud that he had ADHD.  "But this is a small program.  Everyone knew

that I had ADHD.  And there were other residents that had ADHD that the program had

helped, so I didn't thing I was in uncharted territory."  Decl. of Counsel Pickett, Ex. A,

(Vorgias Dep.), p.86:7-10.

29.   Disputed as stated by Defendant.

Q.   "Did you ever ask Dr. Hill to provide any accommodations or

modifications for you in the program because of your ADHD?"

A.   Yes., ma'am.

Q.   What were those?

A.   Nothing specific.  I told her I was struggling at times with the EMR

(Electronic medical record).  And someone who is familiar with ADHD knows that just

a lot of, a lot of buttons, a lot of clicking, it can be extra intimidating.  And I was

having difficulty juggling the EMR and make it do what I wanted it to do and was

asking for help."  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.83:6-16.

Q.   "Did you get the help that you asked her for with the EMR?

A.   Clearly not, ma'am."

Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.84:7-9

30.   Disputed.

Q.   "I asked Dr. Hill for another bite at the apple, for another

presentation.  And she was very calming and she said you will get another opportunity,

just do better, calm down.  But she knew I made it clear to her that I was nervous and

struggling with that."  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.175:23-25 and p.176:1-3.

31.    Disputed.

Q.    "Did you get the help that you asked her for with the EMR?

A.    Clearly not, ma'am."  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.84:7-9.

32.    Disputed.

A.    "I told her I was having difficulty with the EMR.  I couldn't pinpoint exactly what it was.  And there was no real extra help provided.  I sought out senior residents and figured it out on my own, but this was after they had put me on citation.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.84:22-25 and p.85:1.

33.    Disputed as stated by Defendant.  Dr. Vorgias asked for help and no real help was provided and he was put on citation.  He did attempt to "figure" the EMR out on his own.  "And there was no real extra help provided.  I sought out senior residents and figured it out on my own, but this was after they had put me on citation.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.84:22-25 and p.85:1.

34.    Undisputed.  Additionally, Dr. Vorgias also told, Dr. Miller, Dr. Pearson, and Dr. McCloud that he had ADHD.  "But this is a small program.  Everyone knew that I had ADHD.  And there were other residents that had ADHD that the program had

helped, so I didn't think I was in uncharted territory."  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.86:7-10.

35.    Disputed as stated by Defendant.  Plaintiff Vorgias was not questioned whether he had asked program Directors Meier and Powers about "*accommodations*" related to ADHD.

Q.    "Did you ever talk to Dr. Mayer about a request for job "*modifications*" related to your ADHD?  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.89:17-18

Q.    "Did you ever ask Dr. Powers for any job "*modifications*" related to your ADHD?  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.) p.90:13-14

36.    Undisputed that the CARED committee meeting notes are attached to the Decl. of Hill, Ex.3.  Additionally, Ex.3 clearly identifies Plaintiff Vorgias as being affected by "Anxiety" as of 10/23/2018.

Additionally, Plaintiff objects as the Hill Decl., ¶5, Ex.3, contains hearsay.

37.    Undisputed that the CARED committee meeting notes indicate that, "there is verbal and documented positive and negative feedback regarding his [Dr. Vorgias'] performance."

38.    Disputed that Plaintiff Vorgias lacked medical knowledge.

A.    And I want to be clear when I told Dr. Hill this, this had nothing to

do with medical knowledge, I understood all of the procedures and why we do them.

Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.153:15-17.

Also Plaintiff's Expert Witness, Scott Whitmer, Psy.D, opines in part:

Dr. Vorgias is highly functional and capable of finishing out a 3-year medical

residency if he is provided normal supportive supervision.  If there is a chance to

finishing up at CWFM, then a new supportive supervisor should be made available.

However, its highly unlikely CWFM will offer him another chance based on how they

terminated him. If a new residency site is required, it would be supportive if CWFM

were to provide a positive written reference that provides confidence with the next site

that Dr. Vorgias is capable but didn't finish with them due to a misunderstood

diagnosis or their hasty decision making.  ECF 35 & 35-1, Decl. of Scott Whitmer,

Psy.D, Ex. A, p.32.

Also, Plaintiff Vorgias has consistently testified that:

A.    And all it would require for them is a little extra supervision.  This

is an easy condition to fix.  And I am working now as proof.  I passed my step three, I

have proof that I know my medical knowledge, and they got me wrong.  Decl. of

Counsel Pickett, Ex. A, (Vorgias Dep.), p.187:9-13.

It is undisputed that the CARED committee meeting notes indicate that, medical

knowledge is lacking, per Dr. Rue, and preceptor shift card from Dr. Macleod express

concerns about medical knowledge and concerns about managing increasing caseloads. Hill Decl., ¶5, Ex.3.  Dr. Vorgias however, disputes that he lacked medical knowledge.

Additionally, Plaintiff objects as the Hill Decl., ¶5, Ex.3, contains hearsay.

39.    Undisputed that 10/23/18 CARED notes indicate in part, "Placing Demetrios at the first stage of the citation process-which is called constructive citation. The Resident Handbook states, "Constructive Citations are areas of concern on which the Resident should focus his/her study, but are not serious enough to cause concern about advancement.  Decl. of Counsel Pickett, Ex. D, *Plaintiff's Initial Disclosures, Central Washington Family Medicine Residency Program Resident Handbook, 4/2019, p.45*.

Additionally, the CARED notes indicates, "For organizational assistance-mandate that he contact the EAP and WPHP."

Additionally, Plaintiff objects as the Hill Decl., ¶5, Ex.3, contains hearsay.

40.    Disputed as stated by Defendant.  Plaintiff was not asked if he now believes that his undiagnosed Generalized Anxiety Disorder was to blame for all areas for improvement identified in the constructive citation.  The actual testimony is:

Q.    Is it your testimony that all of those areas for improvement are attributable to an undiagnosed condition?

A.    In part, yes, ma'am.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.123:13-19.

41.     Undisputed that 10/23/18 CARED notes indicate in part, "Tasking Demetrious to find a system that works for him in order to keep him organized.  It is also undisputed that the 10/23/18 CARED notes confirm "anxiety" was affecting Dr. Vorgias.

Additionally, Plaintiff objects as the Hill Decl., ¶5, Ex.3, contains hearsay.

42.     Disputed as stated by Defendant.  The 10/23/18 CARED notes indicate in part, "**Tentative**- Dr. Bauman to shadow Demetrios during FMS."

Dr. Bauman, Psy.D. is a Licensed Psychologist and Behavioral Health Consultant and Faculty in the Central Washington Family Medicine Residency Program.  Dr. Bauman shadowed Dr. Vorgias on 10/31/2018, noting in part, Dr. Vorgias appeared to be aware of his "current struggles" and that his "struggles" have been "weighing on him."  Dr. Bauman further noted that Dr. Vorgias appeared to be "overwhelmed" at times; however, was not sure if this was atypical for a first year resident on his first FMS rotation nor a reflection of how Dr. Vorgias handles stressful situations.  According to Dr. Bauman, Dr. Vorgias appeared to be very hard working. Hill Decl. ¶8 Ex.4; Decl. of Counsel Pickett, Ex. E, *Defendant's Initial Disclosures, pp. 55-56.*

43.     Undisputed.

44.     Disputed as stated by Defendant.  Dr. Bauman reported, "I am unable to assess how his behavior matches up to his peers, due to having minimal perspective on

expectations of residents on FMS.  Thus, I would highly suggest combining my

observations with attendings and fellow resident's feedback.  Hill Decl. ¶8 Ex.4;

*Defendant's Initial Disclosures, p. 56.*

Additionally, Plaintiff objects as the Hill Decl., ¶8, Ex.4, contains hearsay.

45.    Disputed.  I did know how to "triage" my day and get things done.

However, I was often given "conflicting" advice by others on how to best proceed.

Being in this position could be very challenging when learning the basics is already so

difficult. Vorgias Decl. at p.4, ¶28 and p.5, ¶1-2; Decl. of Counsel Pickett, Ex. E,

*Defendant's Initial Disclosures, p.86.*

Additionally, Plaintiff objects as the Hill Decl., ¶10, Ex.5, contains hearsay.

46.    Disputed as stated by Defendant.  Dr. Miller was specifically informed by

Plaintiff that he struggling with ADHD.  Decl. of Counsel Pickett, Ex. A, (Vorgias

Dep.), p.88:2-9.

Additionally, Plaintiff objects as the Hill Decl., ¶10, Ex.5, contains hearsay.

47.    Disputed.  Doctors should not "self-diagnose."  This is especially true

when you are in a residency program and just learning how to practice medicine.

Residents should be properly supervised and guided as they learn.  I did seek help.  I

did attend the neuropsychological exam that CHCW demanded.  I promptly tried to

relay the report and requests for accommodation as soon as I received them from

WPHP.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.186:4-25; Vorgias Decl. p.7, ¶11.

48.    Undisputed that on 01/23/2019 the CARED committee met to issue a consequential citation which included instructions to Plaintiff Vorgias that, "You will receive an evaluation by Washington Physician Health Program (WPHP), in person, in Seattle, to determine your fitness to practice in residency.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), Ex.8, p.74.

49.    Undisputed that Dr. Vorgias received a consequential citation. Consequential Citations are areas of concern significant enough to require a Resident and faculty to develop a formal plan of corrective action.  Failure to correct these areas with a specified time frame could result in continued remediation and probation.  Decl. of Counsel Pickett, Ex. D, *Plaintiff's Initial Disclosures, Central Washington Family Medicine Residency Program Resident Handbook, 4/2019, p.45.*

50.    Disputed as stated by Defendant.  The primary concern was that he was accused of lacking sufficient medical knowledge.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.187:9-13; Vorgias Decl. p.4, ¶5, and p.6, ¶10.

Additionally, Plaintiff objects as Defendants statements contained in ¶50 are hearsay.

51.    Disputed.  The primary concern relayed to Dr. Vorgias was that he was accused of lacking sufficient medical knowledge.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.187:9-13; Vorgias Decl. p.4, ¶5, and p.6, ¶10.

Additionally, Plaintiff objects as Defendants statements contained in ¶51 are hearsay.

52.    Disputed as stated by Defendant.  Dr. Vorgias never met with the CARED committee.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.58:3-7; Vorgias Decl. at p. 6, ¶9.

Additionally, Plaintiff objects as Defendants statements contained in ¶52 are hearsay.

53.    Disputed.  Dr. Vorgias never met with the CARED committee.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.58:3-7; Vorgias Decl. at p. 6, ¶9.

Additionally, Plaintiff objects as Defendants statements contained in ¶53 are hearsay.

54.    Disputed.  There are no immoral, unethical, illegal, or otherwise egregious actions or behaviors Dr. Vorgias was cited for or that contributed to his termination.  Dr. Vorgias was assessed by many as a well-loved doctor by patients and peers and staff.  There were no immoral, unethical, or otherwise egregious actions Dr. Vorgias displayed that justified termination.  ECF 35 & 35-1, Decl. of Scott Whitmer, Psy.D., Ex. A, p.29.

Additionally, Plaintiff objects as Defendants statements contained in ¶54 are hearsay.

55.     Undisputed that Dr. Vorgias followed each item in the action plan.

56.     Disputed.

Q.     "Did you ever ask Dr. Hill to provide any accommodations or modifications for you in the program because of your ADHD?"

A.     Yes., ma'am.

Q.     What were those?

A.     Nothing specific.  I told her I was struggling at times with the EMR (Electronic Medical Record).  And someone who is familiar with ADHD knows that just a lot of, a lot of buttons, a lot of clicking, it can be extra intimidating.  And I was having difficulty juggling the EMR and make it do what I wanted it to do and was asking for help."  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.83:6-19.

Q.     "Did you get the help that you asked her for with the EMR?

A.     Clearly not, ma'am."  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.84:7-9

Also,

Q.     "I asked Dr. Hill for another bite at the apple, for another presentation.  And she was very calming and she said you will get another opportunity, just do better, calm down.  But she knew I made it clear to her that I was nervous and

struggling with that."  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.175:23-25 and p.176:1-3.

57.    Disputed as stated by Defendant.  Dr. Vorgias Dr. Moran knew "I wasn't trying to be disrespectful.  I was trying to be helpful in him doing a procedure (Transvaginal ultrasound).  And I inadvertently did something that made the patient uncomfortable and when I was made aware, I stopped.  And I wouldn't do it again.  It was a learning experience.  It was a teaching moment.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.138:10-16.

Additionally, Plaintiff objects as Defendants statements contained in the Hill Decl., ¶13, Ex. 6 are hearsay.

58.    Disputed as stated by Defendants.  See response to ¶58, above. Additionally, Plaintiff objects as Defendants statements contained in the Hill Decl., ¶13, Ex. 6 are hearsay.

59.    Disputed as stated by Defendant.  Dom Nguyen was assigned to Dr. Vorgias, in theory, to help identify were he [Dr. Vorgias] was struggling and how to get better.  Dr. Nguyen was "absolutely awful."  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p. 156:14-25; 157:1-2.

60.    Undisputed.

61.    Undisputed.

62.     Disputed.  Dr. Nguyen accused Dr. Vorgias of being argumentative and unteachable behind his back.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.157:5-14.

Also, a lack of supportive supervision and mentorship was lacking from Dom Nguyen.  There is evidence to suggest that if you are not liked among the in-group, your requests for support would be dismissed.  Dr. Nguyen's approach of hostility resulted in Dr. Vorgias pushing back when he felt as though Dr. Nguyen was being hostile.  When Dr. Vorgias attempted to appropriately defend himself, Dr. Nguyen became retaliatory as did medical management who ultimately chose to terminate his residency prematurely.  ECF 35 & 35-1, Decl. of Scott Whitmer, Psy.D., Ex. A, p.29.

Furthermore, Dr. Nguyen wrongly accused Dr. Vorgias of not having the knowledge of medicine consistent with his training level.  He wrongly evaluated and accused him of not being "teachable". This is highly unlikely if one were to consider the following:

i. Despite Dr. Vorgias ADHD, he earned a 3.5 + GPA at St. George's University School of Medicine.

ii. Dr. Vorgias passed Step 1, Step 2, and Step 3 of his United States Medical Licensing Exams.

iii. Many others who worked with Dr. Vorgias gave him high marks for quality traits and fund of knowledge to be a physician.

iv. He is in the superior to very superior range of intellectual functioning areas that would suggest he is very capable of learning and maintaining a high level of knowledge for which he committed his life to.

v. The fact pattern of record shows that Dr. Vorgias had/has the knowledge, did have some correctable performance issues that were corrected and could be corrected with appropriate support, and was teachable.

vi. The fact pattern of record illustrates that Dr. Nguyen along with a few others, made up their minds prematurely to terminate him, acted with haste, hostility, and retaliatory behavior.  ECF 35 & 35-1, Decl. of Scott Whitmer, Psy.D., Ex. A, p.30-31.

63.    Disputed as stated by Defendant.  See response to ¶62, above.

64.    Disputed as stated by Defendant.  See response to ¶62, above.

65.    Disputed as stated by Defendant.  Additionally, Plaintiff objects as Defendants statements contained in the Hill Decl., ¶13, Ex. 6 are hearsay.

66.    Disputed as stated by Defendant.  According to Dr. Powers' testimony, 'And it looks like the timing here is he – he'd been referred to WPHP already, and they he got his neuropsych evaluation later."  Decl. of Counsel Pickett, Ex. B, (Powers Dep.), at p.178:23-25  Also, see, Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex.4-Summary of evaluations for Demetrious Vorgias, identifying medical knowledge as

"fair" and listing no patient safety concerns, and identifying Dr. Vorgias as enthusiastic, caring, and team oriented.

67.    Undisputed that Dr. Rue requested a neuropsych eval ASAP for Dr. Vorgias. Decl. of Counsel Pickett, Ex. C, (Rue Dep.), Ex.10.

68.    Disputed as stated by Defendant.  Dr. Rue has testified that, "I do recall that that [neuropsych evaluation] was a possible option for helping us determine a potential cause of Dr. Vorgias' difficulty and struggle in performing his duties as a Resident.  Decl. of Counsel Pickett, Ex. C, (Rue Dep.) p.22:23-25 and p.23:1.  Dr. Rue further testified that, "I don't recall asking for a neuropsych evaluation other than in this email.  It is one of the tools that we have potentially for, as I stated earlier, assisting us with delineating problems within potential – you know, sources of problems with residents experiencing difficulty in taking care of patients".  Decl. of Counsel Pickett, Ex. C, (Rue Dep.), p.74:19-25.  Dr. Rue further acknowledges that, "patient safety, as a general principle, is always a concern when you're training a new doctor.  Decl. of Counsel Pickett, Ex. C, (Rue Dep.), p.76:5-8.  Dr. Rue admits that, "I knew that this was one of the things I had heard discussed in the past and that this might be a tool that we could use to help us or not with the difficulties we were experiencing with Dr. Vorgias. Decl. of Counsel Pickett, Ex. C, (Rue Dep.), p.78:23-25 and p.79:1-2.  Dr. Rue admittedly did receive a neuropsych evaluation on a form Resident for who she believes there were also some concerns about medical knowledge.  In that instance, the

CARED Committee reviewed the document from the neuropsych and that was again one piece of information to help build an individualized learning plan for the particular Resident.  Decl. of Counsel Pickett, Ex. C, (Rue Dep.), p.86:19-25 and p.87:19-22.  Dr. Rue admittedly observed anxiety and anxious behavior in Dr. Vorgias during his residency, including, "I observed difficulty in communicating--- verbally communicating a history and physical exam in a timely manner, in a linear process in the normal SOAP format.  I observed many pauses and sighs in his communication that I did not observe in other residents.  I observed a lot of words without a lot of content during these verbal presentations that were difficult to follow.  Those are some of the behaviors that I observed".  Decl. of Counsel Pickett, Ex. C, (Rue Dep.), p.46:25 and p.47:1-10.  Dr. Rue acknowledged receiving an email from Dr. Midhuan Papazian and Dr. Nora Kirschner on April 23, 2019 that clearly identified Dr. Vorgias as being "extremely anxious" and "perhaps the fundamental knowledge is there but masked by anxiety."  Decl. of Counsel Pickett, Ex. C, (Rue Dep.), Ex. 15.  Dr. Rue does not recall ever relaying information to the CARED Committee that, "Dr. Vorgias' medical knowledge was there, but masked by anxiety."  Decl. of Counsel Pickett, Ex. C, (Rue Dep.), p.51:20-25.  Similarly, Dr. Rue does not recall Dr. Powers [Interim program director] nor Dr. Hill [Faculty advisor for Vorgias] ever relaying to the CARED Committed that Dr. Vorgias' medical knowledge was there, but masked by anxiety.  Decl. of Counsel Pickett, Ex. C, (Rue Dep.), p.52:1-25 and p.53:1-6.  Dr. Rue does

believe that the CARED Committee had access to this email as part of their process. Decl. of Counsel Pickett, Ex. C, (Rue Dep.), p.54:6-25.

69.    Undisputed that Dr. Vorgias was placed on probation on 02/13/2019 and that as part of his probation he was to receive an evaluation by the Washington Physician Health Program (WPHP).  Decl. of Counsel Pickett, Ex. E, Defendant's Initial Disclosures, p.74, ¶7.

70.    Disputed as stated by Defendant.  Paragraph 6 of the action plan states: "You will be shadowed in your family medicine clinic by a faculty member in the next 1 mo, with special attention paid to EMR efficiency, time management, & history and physical performance".  Decl. of Counsel Pickett, Ex. E, Defendant's Initial Disclosure, p.73, ¶6.  Additionally, paragraph 7 of the action plan expressly required that Dr. Vorgias undergo an evaluation by WPHP to determine fitness to practice in residency. *Id.* at p.74, ¶7.

71.    Disputed as stated by Defendant.

A.    "I told her I was having difficulty with the EMR.  I couldn't pinpoint exactly what it was.  And there was no real extra help provided.  I sought out senior residents and figured it out on my own, but this was after they had put me on citation".  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.84:22-25 and p.85:1.

72.    Undisputed that Dr. Powers emailed the CHCW faculty, in part, to restrict Dr. Vorgias' ability to practice and request evaluations from faculty of Dr. Vorgias.

Powers Decl. ¶5, Ex.1.  However, it is disputed that Dr. Powers did this despite learning from the Washington Physician Health Program "WPHP" on January 30, 2019 that Dr. Vorgias could be returned to practice while WPHP completed an evaluation. Powers Dep., Ex.11.  According to Laura Moss, M.D., Associate Medical Director of WPHP, clinical coordinator, Cynthia Morales contacted Dr. Powers on January 20, 2019 and stated that the WPHP team recommended that Dr. Vorgias could be returned to practice *while* we complete the evaluation.  During a follow up appointment with WPHP a neuropsychological evaluation was scheduled for April 3, 2019.   Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex. 11.

73.    Disputed as stated by Defendant.  While Dr. Moss did indicate that based on a meeting with Dr. Vorgias there was no evidence of a current impairment at that time.  However, Dr. Moss also expressly informed Dr. Powers that he [Dr. Vorgias] will be *undergoing additional evaluation for an outside provider to rule out an underlying medical condition that could affect his ability* to practice with reasonable safety to patients.  Powers Decl. ¶5, Ex.1.  Also, previously noted above, on January 30, 2019, WPHP clinic coordinator, Cynthia Morales contacted Dr. Powers to confirm Dr. Vorgias' attendance at the scheduled examination and stated that the WPHP team recommended that Dr. Vorgias could be returned to work *while* we [WPHP] complete the evaluation.  Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex.11.

74.      Undisputed.  Additionally, WPHP also told Dr. Powers on January 30, 2019 that Dr. Vorgias could be returned to work *while* we [WPHP] complete the evaluation and recommendations for accommodation would later be communicated to Dr. Powers.  Decl. of Vorgias, p.3, ¶3; Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex.11.

75.      Disputed as stated by Defendant.  Dr. Vorgias never met with the CARED Committee on February 27, 2019 as stated in the Decl. of Hill p.7, ¶17.  Undisputed that the CARED Committee noted the following positive comments regarding Dr. Vorgias:

Inbox progress:  "Excellent"  "Great progress!"

Nursing Feedback: "No inappropriate behavior, do not feel uncomfortable working with you, doing well chart prepping."

Clinical Case Studies:      Appreciate thoroughness and timeliness in completing and sending clinical case studies.  CARED Committee also recommended that Dr. Vorgias get help form IT to download appropriate apps for videoconferencing with WPHP.  Decl. of Hill, Ex. 8.  Also, the evaluation additional evaluation from WPHP was still in progress.  On March 1, 2019, Dr. Vorgias met with WPHP to discuss the additional evaluation, including a neuropsychological exam.  Decl. of Hill, Ex. 8; Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex. 11; Decl. of Vorgias.

76.     Disputed as stated by Defendant.  Dr. Vorgias never met with the CARED Committee on February 27, 2019 as stated in the Decl. of Hill p.7, ¶17.

77.     Disputed.  As of February 27, 2019 Dr. Vorgias was actively in the process of still being evaluated to determine what underlying medical conditions could be affecting his ability to successfully practice in the residency program.  This was initiated by Dr. Powers on January 23, 2019.  Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex. 11.  As of February 27, 2019, CHCW was still awaiting final results from the WPHP evaluation CHCW, had required as part of the probation process.  As indicated in the Resident Handbook, Probation includes, "Further testing, evaluation by professionals, tutorials or outside therapy/treatment may be required.  Expectations for achievement and the timeline for reevaluation will be determined."  Decl. of Counsel Pickett, Ex. D, Plaintiff's Initial Disclosures, CWFMR program Resident Handbook, 4/2019, p. 45.

78.     Disputed as stated by Defendant.  As of April 17, 2019, Dr. Vorgias had completed his neuropsychological examination (exam complete on April 3, 2019).  WPHP was first notified on April 18, 2019 of the findings and recommendations during a telephone call with neuropsychology examiner, Dr. Kelly Cornett.  Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex. 11; Decl. of Vorgias, p.2-3, ¶3, Ex.8.

79.     Disputed as stated by Defendants.  Dr. Vorgias did review evidence-based articles related to his patients' condition.  Decl. of Vorgias, p.2-3, ¶3, Ex.8.

80.    Disputed as stated by Defendants.  Dr. Vorgias ordered blood draws and labs for patients based on his best professional judgment, which was clearly identified "Good" by CWCH during a summary of his performance on June 6, 2019.  Decl. of Counsel Pickett, Ex. B, (Powers Dep.), p.112:19-22, Ex. 4.

81.    Disputed that Dr. Vorgias' knowledge was below that of a medical student.

A.    And I want to be clear when I told Dr. Hill this, this had nothing to do with medical knowledge, I understood all of the procedures and why we do them. Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.) p.153:15-17.

Also Plaintiff's Expert Witness, Scott Whitmer, Psy.D., opines in part:

Dr. Vorgias is highly functional and capable of finishing out a 3-year medical residency if he is provided normal supportive supervision.  If there is a chance to finishing up at CWFM, then a new supportive supervisor should be made available. However, its highly unlikely CWFM will offer him another chance based on how they terminated him. If a new residency site is required, it would be supportive if CWFM were to provide a positive written reference that provides confidence with the next site that Dr. Vorgias is capable but didn't finish with them due to a misunderstood diagnosis or their hasty decision making.  ECF 35 & 35-1, Decl. of Scott Whitmer, Psy.D., Ex. A, p.32.

Also, Plaintiff Vorgias has consistently testified that:

A.    And all it would require for them is a little extra supervision.  This

is an easy condition to fix.  And I am working now as proof.  I passed my step three, I

have proof that I know my medical knowledge, and they got me wrong.  Decl. of

Counsel Pickett, Ex. A, (Vorgias Dep.), p.187:9-13.  Undisputed the Nora Kirschner

made such claims.

82.    Disputed as stated by Defendant.  It is undisputed that the CARED

Committee progress report does, in part, discuss concerns.  However, the note also

states, "He [Dr. Vorgias] will be ineligible for promotion to the R2 year and would

need to continue as an off cycle R1 and re-do his failed FMs rotations and pass them in

order to continue."  The Residency Handbook, 4/2019, states, "All failed rotations must

be repeated and the Resident's advancement to the next level of training delayed a

commensurate amount.  Likewise, the period of training will be extended to meet the

completion of training requirements."  The Handbook further states, "If the termination

is for lack of academic progress, the Resident will have progressed through several

stages of remediation and termination will be a last resort *after* those steps have failed."

Stages of remediation include, Constructive Citations, Consequential Citations,

Probation, Suspension, and Dismissal.  The Probation stage of remediation includes,

"*Further testing, evaluation by professionals, tutorials or outside therapy/treatment be*

*required.  Expectations for achievement and the timeline for reevaluation will be*

*determined*."  Dr. Vorgias was actively in the probation/remediation stage when the

CARED Committee began discussing his termination even before receiving the

neuropsychological exam findings and recommendations.  Decl. of Counsel Pickett, Ex.

D, Plaintiff's Initial Disclosures, 4/2019 Resident Handbook, p. 45.

83.    Undisputed.

84.    Disputed as stated by Defendant.  Dr. Powers asked for and update on how

Dr. Vorgias was doing based on his last WPHP evaluation performed a few weeks ago.

Dr. Powers prematurely informed Ms. Morales of the following despite knowing full

well that Dr. Vorgias' "further testing/neuropsych eval and report was not yet complete.

According to Dr. Powers, "we suspect he [Dr. Vorgias] will not pass his current

inpatient family medicine rotation.  This will lead to his termination.  Concerns

regarding professionalism have improved, but medical knowledge lags far behind his

peers and he is in no way able to be promoted to the second year of residency."  Decl.

of Counsel Pickett, Ex. B, (Powers Dep.), Ex. B. and Ex. 11.

85.    Disputed as stated by Defendant.  Ms. Morales stated that the evaluation

by WPHP was complete and, based on the WPHP evaluation there was no current

impairment.  Additionally, Ms. Morales was clear in that it was recommended that Dr.

Vorgias be enrolled in a monitoring agreement for an underlying medical condition,

and there were recommendations for accommodations that would later be

communicated to Dr. Powers.  Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex. B

and Ex. 11.  Ms. Morales also informed Dr. Powers that, "We hope that the

recommendations provided to him will impact his performance." We believe it may take some time before these recommendations produce results." Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex. B and Ex. 11.

86. Undisputed that was contained in the April 19, 2019 email from Ms. Morales. See also, above response to ¶85.

87. Undisputed that was contained in the April 19, 2019 email from Ms. Morales. See also, above response to ¶85.

88. Disputed. Ms. Morales did in fact expressly state that WPHP was enrolling Dr. Vorgias in monitoring of "underlying medical conditions." Additionally, Mr. Morales did in fact expressly state, "We hope that the recommendation provided to him will impact his performance." Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex. B. Ms. Morales further did in fact expressly state to Dr. Powers, "there were recommendations for accommodations that would later be communicated to Dr. Powers." Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex. 11.

89. Disputed as stated by Defendant. Defendants neglect to identify the following information that is contained in the April 23, 2019 email from Dr. Papazian:

"I think he got really anxious that I was there (I think)." "He is extremely anxious." "I did ask him to talk about COPD dx and management at didactics and I think he did a fine job with it even though he was really nervous to do so."

90.     Disputed as stated by Defendant.  Undisputed that this phrase is contained in the April 23, 2019 email.  However, Plaintiff and Plaintiff's Expert Witness, Scott Whitmer, Psy.D., opine in part:

Dr. Vorgias is highly functional and capable of finishing out a 3-year medical residency if he is provided normal supportive supervision.  If there is a chance to finishing up at CWFM, then a new supportive supervisor should be made available. However, its highly unlikely CWFM will offer him another chance based on how they terminated him. If a new residency site is required, it would be supportive if CWFM were to provide a positive written reference that provides confidence with the next site that Dr. Vorgias is capable but didn't finish with them due to a misunderstood diagnosis or their hasty decision making.  ECF 35 & 35-1, Decl. of Scott Whitmer, Psy.D., Ex. A, p.32.  Furthermore, CHCW wrongly labeled Dr. Vorgias as not having the knowledge of medicine consistent with his training level.  Dr. Vorgias was wrongly evaluated and accused not being "teachable". This is highly unlikely if one were to consider the following:

i. Despite Dr. Vorgias' ADHD, he earned a 3.5 + GPA at St. George's University School of Medicine.

ii. Dr. Vorgias passed Step 1, Step 2, and Step 3 of his United States Medical Licensing Exams.

iii. Many others who worked with Dr. Vorgias gave him high marks for

quality traits and fund of knowledge to be a physician.

iv. He is in the superior to very superior range of intellectual functioning areas that would suggest he is very capable of learning and maintaining a high level of knowledge for which he committed his life to.

v. The fact pattern of record shows that Dr. Vorgias had/has the knowledge, did have some correctable performance issues that were corrected and could be corrected with appropriate support, and was teachable.

vi. The fact pattern of record illustrates that some faculty and residents made up their minds prematurely to terminate Dr. Vorgias, acted with haste, hostility, and retaliatory behavior.  ECF 35 & 35-1, Decl. of Scott Whitmer, Psy.D., Ex. A, p.30-31.

91.    Undisputed.

92.    Undisputed that on February 4, 2019, Dr. Vorgias failed to pass the FMS for a second time while he was awaiting a neuropsychological evaluation and testing for underlying medical conditions.

93.    Undisputed that on April 1, 2019, Dr. Vorgias failed to pass the FMS for a third time while he was awaiting a neuropsychological evaluation and testing on April 3, 2019.  It is further undisputed that CWCH required Dr. Vorgias to undergo neuropsychological evaluation and testing as part of his remediation/probation.  Decl.

of Counsel Pickett, Ex. C, (Rue Dep.), Ex. 10; Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex. 11.

94.    Disputed as stated by Defendant.  Dr. Powers summarized Dr. Vorgias' performance during his residency training as "Excellent," "Good," and "Fair."  Dr. Powers did not summarize Dr. Vorgias as "Poor" in any training categories.  Dr. Powers states that, "dismissal in May of 2019 for medical knowledge deficits, despite attempts at remediation."  Decl. of Counsel Pickett, Ex. B, (Powers Dep.), Ex. 4.

95.    Undisputed that the CARED Committee met to plan for termination of Dr. Vorgias on 04/24/2019.  Decl. of Counsel Pickett, Ex. E, Defendant's Initial Disclosures p.87-88.  Also undisputed that CHCW and Dr. Vorgias had not yet received the neuropsychological evaluation findings and recommendations for accommodations at the time that the CARED Committee met to plan for the termination of Dr. Vorgias.  It is undisputed by CHCW that Dr. Powers was informed on 04/19/2019 that Dr. Vorgias would be enrolled in a monitoring agreement for an underlying medical condition.  It is disputed by Dr. Powers that she was informed by WPHP that there were recommendations for accommodations that would later be communicated.  Decl. of Counsel Pickett, Ex. B, (Powers Dep.), p.188:2-7, and Ex. 11.

96.    Undisputed that Dr. Powers made the decision to terminate Dr. Vorgias despite knowing that he was undergoing monitoring for underlying medical conditions.

97.    Disputed as stated by Defendants.  Dr. Powers' verification of training and performance of Dr. Vorgias confirms that he exercised appropriate levels of patient care, medical knowledge, practiced based learning and improvement, professionalism, and interpersonal communications skills.  Decl. of Counsel Pickett, Ex. B, (Powers, Dep.), pp.108-113, Ex. 4.

99.    Undisputed that Plaintiff was paid 30 days of salary after his termination.  However, Dr. Vorgias was not provided with a 30 day written notice of intention to terminate his employment.  To the contrary, he was summarily fired and immediately relieved of all duties.

100.    Undisputed that the termination notice does include language regarding a grievance procedure.

101.    Undisputed that Plaintiff did not file an informal grievance as he testified, "I had a medical evaluation pending that I knew they knew.  I was tired from FMS service.  I came right over that day from rounding on my patients.  I just, wasn't there, ma'am.  Decl. of Counsel Pickett, Ex. A, (Vorgias Dep.), p.65:11-15.

102.    Disputed as stated by Defendant.  Undisputed that on May 7, 2019 Dr. Vorgias received confirmation that the anxiety and symptoms he had been suffering from during his residency were due to generalized anxiety disorder "GAD" and attention-deficit/hyperactivity disorder "ADHD".  Dr. Vorgias promptly attempted to

relay this information to Dr. Powers who refused to accept it.  Decl. of Counsel Pickett, Ex. B, (Powers Dep.), p. 146:1-10.

103.   Undisputed that Dr. Vorgias attempted to share the GAD and ADHD diagnosis with Dr. Powers on May 8, 2019.

104.   Undisputed that Dr. Vorgias attempted to communicate to Dr. Powers that the neuropsychological evaluation/findings made it clear that he had generalized anxiety disorder (GAD) that gave the impression that he lacked medical knowledge and that he was difficult to train.

105.  Disputed as stated by Defendant. The neuropsychological report findings that Dr. Vorgias attempted to share with Dr. Powers made it abundantly clear that ADHD was included in the examination findings.  Presumably Dr. Powers would have known that if she had taken the time to read the report.

106.   Undisputed.

107.   Undisputed.

108.   Disputed as stated by Defendant.  CHCW has numerous observations of Dr. Vorgias during his residency that confirmed his struggle with anxiety. Additionally, CHCW required a neuropsychological evaluation with WPHP to determine get some idea as to why he was struggling.  CHCW simply refused to wait for the examination finds, recommendations, and request accommodations contained in the report and instead, chose to terminate Dr. Vorgias.

1

Dated this 22nd day of December, 2021.

2

| THE PICKETT LAW FIRM<br>By: s/William Pickett<br>William D. Pickett, WSBA #27867<br>917 Triple Crown Way, Suite 100<br>Yakima, WA 98908<br>bill@wpickett-law.com<br>*Attorney for Plaintiff* | LAW OFFICES OF SETH W.<br>WIENER<br>By: s/Seth W. Wiener<br>Seth W. Wiener, CSBA #203747<br>609 Karina Court<br>San Ramon, CA 94582<br>Email: sethwiener@yahoo.com<br>*Attorney for Plaintiff – Pro Hac<br>Vice* |
|---|---|
| LAW OFFICES OF LUAN T. LE<br>By: s/Luan Le<br>Luan T. Le. CSBA #171029<br>1190 S Bascom Avenue, Suite 213<br>San Jose, CA 95128<br>Email: ledowningllp@gmail.com<br>*Attorney for Plaintiff – Pro Hac Vice* | |

# CERTIFICATE OF SERVICE

I hereby certify that on December 22nd, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Luon T. Le, *pro hac vice*
Law Offices of Luan T. Le
1190 S. Bascom Ave, Suite 213
San Jose, CA 95128
Tel:  408-247-4715
Email:  ledowningllp@gmail.com
*Co-counsel for Plaintiff*

Mr. Seth W. Wiener, *pro hac vice*
Law Offices of Seth W. Wiener
609 Karina Court
San Ramon, CA 94582
Tel:  925-487-5607
Email:  seth@sethwienerlaw.com
*Co-counsel for Plaintiff*

Catharine Morisset, WSBA #29682
Nate Bailey, WSBA #40756
Fisher & Phillips, LLP
1201 Third Avenue, Ste. 2750
Seattle, Washington  98101
Tel:  206-682-2308
Email:  cmorisset@fisherphillips.com
        nbailey@fisherphillips.com
*Attorneys for Defendant*

**DATED** at Yakima, Washington, this 22nd day of December, 2021.


By:   s/ William D. Pickett
        William D. Pickett, WSBA NO. 27867