The Honorable Stanley A. Bastian

William D. Pickett, WSBA #27867
THE PICKETT LAW FIRM
917 Triple Crown Way, Ste. 100
Yakima, Washington 98908
Tel: 509-972-1825
bill@wpickett-law.com
*Attorney for Plaintiff*

Luan T. Le, *pro hac vice*
Law Offices of Luan T. Le
1190 S. Bascom Ave, Suite 213
San Jose, CA 95128
Tel: 408-247-4715
Email: ledowningllp@gmail.com
*Co-counsel for Plaintiff*

Seth W. Wiener, *pro hac vice*
Law Offices of Seth W. Wiener
609 Karina Court
San Ramon, CA 94582
Tel: 925-487-5607
Email: seth@sethwienerlaw.com
*Co-counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| DEMETRIOS VORGIAS,<br><br>    Plaintiff,<br><br>v.<br><br>COMMUNITY HEALTH OF CENTRAL WASHINGTON,<br><br>    Defendant. | Case No.: 1:21-cv-03013-SAB<br><br>**DECLARATION OF PLAINTIFF DEMETRIOS VORGIAS IN OPPOSITION TO DEFENDANTS SUMMARY JUDGMENT** |

Plaintiff, DEMETRIOS VORGIAS, declares under penalty of perjury, under the laws of the United States of America and the laws of the State of Washington, that the following is true and correct:

1. I am over the age of 18 years and am a citizen of the United States. I have personal knowledge of the facts set forth in this declaration, and am competent to testify to them at trial. I have agreed to voluntarily provide the following sworn statement to accurately record the event that I experienced during my employment with defendant Community Health of Central Washington "CHCW" in Yakima, Washington from June 25, 2018 and ending May 1, 2019.

2. Defendants assert that I posed a great risk to patient safety, this is simply untrue. I did not act in an unsafe manner during my residency with CHCW. Just days before I was terminated, I was assigned a critically ill ICU patient by my attending, Dr. Pearson. The patient was assigned to me when they were in the ICU and then later transferred to telemetry. If I were to have posted a risk to patient safety, they would not have assigned me such a high-risk/high care patient. Dr. Pearson stated, "The admit was pretty complex…there was a lot of data to sift through…he was able to convey pretty well that patient's progress and current status…his resultant note was pretty good, hit the important points and was clear". Ex. 1.

Additionally, it was Dr. Powers' own testimony in her deposition that I was safe to practice with patients; Dr. Powers stated, "We were looking for conditions that would make him unsafe to practice. And it seemed that he didn't have an underlying substance abuse disorder, which we were very happy to hear. Although, I'm not sure if they would have told us that because of confidentiality, but they said simply that he's safe." Then again when asked if "he was safe to practice", Dr. Powers again stated, "right. Yep.". Ex. 2.

3. Defendants assert that they and I were unaware of any disabilities and/or mental health issues, again, this is simply untrue. CHCW's own records show they knew I was struggling with mental health.

- Dr. Rue herself requested a neuropsych evaluation of me in February per her own deposition testimony. Ex. 3.

- CHCW's residency program also referred me to WPHP (Washington Physicians Health Program). Bullet point 7 of my Probation letter states, "You will receive an evaluation by WPHP in person, in Seattle, to determine your fitness to practice in residency". Ex. 4.

- Dr. Moss from WPHP contacted Dr. Powers on 2/15/19 advising that I was being referred for additional evaluation by an outside provider and once that was completed they would be notifying Dr. Powers with any further recommendations. Ex. 5.

- Additionally, Dr. Powers' own deposition testimony states that she knew that on April 19, 2019 that I had completed a neuropsych evaluation. Ex. 6.

- Also, CHCW knew I had a pending evaluation stemming from early May 2019 as stated in the 'CARED Committee notes' dated 4/17/19, item #3, which explained I had to reschedule my WPHP evaluation due to a busy FMS (Family Medicine Service) rotation. Ex. 7; Defendants Initial Disclosures, p.78.

- Additionally, in a 4/19/19 email from Ms. Morales to Dr. Powers, Ms. Morales stated, "We are recommending to him enrollment in monitoring with our organization to monitor underlying medical conditions. We want to monitor these conditions in order to prevent future impairment. We hope that the recommendations provided to him will impact his performance. We believe it may take some time before these recommendations produce results." Ms. Morales also told Dr. Powers there were recommendations for accommodations that would later be communicated to her. Ex. 8.

- In Dr. Hill's own declaration (ECF No. 41), she states that she knew I had ADHD and that I was struggling as well as advising me "…to find a provider and seek any needed treatment…I also encouraged him to find an organizational system that would work for him given his ADHD". Ex. 9

4.  Defendants assert "CHCW cannot have discriminated based on a condition for which it was wholly unaware." And then goes on to state, "simply put, the ADA does

not require clairvoyance". Clairvoyance is not required here-CHCW knew that I had a medical condition, specifically anxiety and ADHD as referenced above. In Dr. Hill's email (CARED Pre-Reading) dated 2/13/19, she quoted what I stated to her; that I would "need a Beta-Blocker" which is what is prescribed for anxiety. Ex. 10. Additionally, I will refer back to Dr. Hill's own declaration (ECF No. 41) which states that she knew I had ADHD and that I was struggling. Ex. 9.

5. I am fully qualified to participate in and successfully complete a medical residency program. First, I graduated medical school with excellent grades; I passed all of my boards on my first attempt with no failures, and I interviewed with and was matched into the CHCW residency program. Since my termination from the residency program at CHCW, I passed my Step 3 Medical Licensing Examination on the first try with no issues whatsoever. This is an objective measure that I am competent in medical knowledge and able to exhibit this. I did not lack sufficient medical knowledge. True and correct copies of my passing test results are attached. Ex. 11; Plaintiff's Initial Disclosures p.105-108.

Additionally, Dr. Harvey's letter of recommendation dated July 3, 2019 states, "it was also clear to me that he would get anxious during his patient presentations…"; "unfortunately, he was discharged from our program before he had an opportunity to address his anxiety. Given the opportunity to address it, I likely would not have needed to write this letter"; and "unfortunately, because of his nervousness, some of the faculty had already made up their minds about Dr. Vorgias and were unable to see the progress that he made" Attached is a true and correct copy of the Letter of Reference that that I received from Dr. Harvey. Ex. 12.

6. Defendants state that my difficulty with EMR (Electronic Medical Record) software system was not the reason or a primary reason that I was failed out of the program. "His inability to demonstrate meaningful medical knowledge, including synthesizing information and presenting patient plans were the primary reasons for his termination, not his difficulties with the EMR system". ECF No. 39, p. 7. This ignores that my anxiety disorder was only heightened by the total lack of assistance in using the

EMR. Defendants failed to address the EMR with me and/or even attempt to accommodate me. Additionally, I *did* know how to "triage" my day and get things done. However, I was often given "conflicting" advice by others on how to best proceed. Being in this position could be very challenging when learning the basics.

- In Dr. Tiffany Mark's email dated 10/01/18 she stated, "Overall I do trust his medical knowledge, but I worry about him getting documentation done in a timely and complete manner" Ex. 13.

- Dr. Miller's 2/13/19 email for the Pre-Reading for CARED Committee meeting submits that I was having trouble with the EMR. Dr. Miller stated, "…his notes were usually done by the time I left in the evening, 1 or 2 of them might be done earlier in the day"; "this also presents significantly more work for attendings in particular"; "efficiency also remains a huge problem"; "I acknowledge that I may be especially frustrated and biased after spending a busy week on service". These comments from Dr. Miller all stem from my difficulties with the EMR. Ex. 14

- In Dr. Bauman's 11/4/2018 email, he specifically stated, "Dr. Vorgias commented…that he is still struggling with the computer system at the hospital. This was evident, as I observed him repeatedly search for something…within the EHR [electronic health record] and having a difficult time locating it"; "…his lack of comfortability and competence with the EHR was impacting his efficiency, as well as being unsure of how to locate relevant information in point-of-care resources". Ex. 15

- Dr. Powers' own testimony in her deposition clearly refute the defendants' position that the EMR was not an issue they considered. "He appeared scattered. He didn't appear particularly nervous to me, but he was always quite talkative and jumping from -- from idea to idea as he was looking through the chart. He had difficulty navigating the electronic medical record, which is vital for being able to find information in a timely way and enter information as well." Ex. 6

Dr. Mark's, Dr. Miller's, Dr. Bauman's, and Dr. Powers' own comments and testimony specifically refute the defendants' assertions that EMR was a non-issue.

7.      Dr. Hill's declaration, ECF No. 41, states in paragraph 9 that I told her I had ADHD and that I was struggling with the EMR and she states that she "arranged to get him extra help…". This is simply not true, Dr. Hill never arranged for me to get extra help with the EMR. She is correct however in that I did disclose to her that I had ADHD.

Then in Dr. Hill's same declaration, ECF No. 41, paragraph 12 she states, "…Dr. Vorgias did not disclose that he had any medical conditions impairing his performance or otherwise request an accommodation. This directly contradicts her previous statement in paragraph 9 where she admits that I told her I had ADHD. Ex. 9.

8.      Defendants again state that my claim should be dismissed because "employers do not need to provide accommodations for undisclosed…disabilities" ECF No. 38, p.11. Again, in Dr. Hill's declaration she states, "In or around October 2018, Dr. Vorgias told me had ADHD and that he was struggling…". Dr. Hill was one of my attendings and I disclosed the fact that I had ADHD to her and that I was struggling-she admits this.

9.      At no time was I interviewed by or met with the "CARED Committee". I do not even know who is or was on the CARED Committee. Dr. Hill states in her declaration, ECF No. 41, paragraph 17, "The next day, CARED met with Dr. Vorgias to provide him with this action plan". Again, this is untrue, I was never asked to come in front of the CARED Committee.

10.      CHCW asserts that the primary reason(s) for my termination was an "inability to demonstrate meaningful medical knowledge…" (ECF No. 38, pg. 7). I did not lack sufficient medical knowledge. What defendants fail to state is that my inability to demonstrate my medical knowledge to my attendings was a direct result of my ADHD and GAD (Generalized Anxiety Disorder) as evidenced by the multiple emails/communications noting my anxiety:

•     The 10/23/18 CARED meeting notes state, "What seems to be anxiety is affecting his [my] confidence, per Dr. Bauman". Ex. 16

- In a 4/26/19 "On the Fly Resident Evaluation" signed by Heidi Martinez, she states, "Perhaps the fundamental knowledge is there but masked by anxiety". Ex. 17

- In the "FMS Attdg Eval of 1st Year Resident", signed by Dr. Katina Rue on 2/10/19 it states, "He was very anxious and this inhibited his ability to be effective". Ex. 18.

11. Defendants knew that I had an underlying medical condition that was hindering my success. They had a responsibility to address it with me and failed to do so.

- The Accreditation Council for Graduate Medical Education (ACGME) provides succinct guidance regarding the affirmative duty of attending physicians to look for GAD, depression, and ADHD. The ACGME states, "this requirement emphasizes the professional responsibility of faculty members and residents…" and section VI.B.4.c).(2) states "recognition of impairment, including from illness, fatigue, and substance use, in themselves, their peers, and other members of the health care team". Attached are true and correct excerpts of the ACGME Common Program Requirements describing the responsibility of CHCW faculty members. Ex. 19. Furthermore, resident doctors should not "self-diagnose." This is especially true when you are in a residency program and just learning how to practice medicine. Residents should be properly supervised and guided as they learn. I did seek help to accomplish this.

12. On May 1, 2019, Interim Director Powers informed me that my residency employment was being terminated effective immediately. I was shocked by this since we (CHCW and myself) were still waiting for the final written results of my neuropsych evaluation that WPHP ordered and Dr. Rue requested as well.

13. I completed a neuropsychological evaluation with Dr. Kelly Cornett on April 3, 2019. I received Dr. Cornett's written report just over a month later, on May 7, 2019. I attempted to relay and review the written report to Dr. Powers right away. Dr. Powers refused to accept Dr. Cornett's report, and instead responded with in an email on May 8, 2019, saying, "Demetrios, I appreciate your struggle…thank you for sharing your progress with me". I have attached a true and correct of both Dr. Cornett's Report, as

well as, the May 8, 2019, email exchange with Dr. Powers as Exhibit 20.  In the end, Dr. Powers was never interested in trying to figure out my underlying health issues with GAD/ADHD, nor was she interested in attempting to make any sort of accommodations for my health issues.  Instead, she quickly terminated me before she receiving the report findings from an evaluation CHCW had demand I undergo.

      14.  As a result of the foregoing, I was denied the opportunity to engage in reasonable workplace accommodations that would have assisted me in successfully completing my residency program to become a fully licensed medical doctor.

      I declare under penalty of perjury, under the laws of the United States of America and the laws of the State of Washington, that the foregoing is true and correct.

      **DATED** this 22nd day of December, 2021, at Iuka, Mississippi.

                              s/Demetrios Vorgias, M.D.
                              DR. DEMETRIOS VORGIAS

DECLARATION OF PLAINTIFF
DR. DEMETRIOS VORGIAS IN OPPOSITION TO
DEFENDANTS SUMMARY JUDGMENT    8

# CERTIFICATE OF SERVICE

I hereby certify that on December 22nd, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Luan T. Le, *pro hac vice*
Law Offices of Luan T. Le
1190 S. Bascom Ave, Suite 213
San Jose, CA 95128
Tel: 408-247-4715
Email: ledowningllp@gmail.com
*Co-counsel for Plaintiff*

Seth W. Wiener, *pro hac vice*
Law Offices of Seth W. Wiener
609 Karina Court
San Ramon, CA 94582
Tel: 925-487-5607
Email: seth@sethwienerlaw.com
*Co-counsel for Plaintiff*

Catharine Morisset, WSBA #29682
Nate Bailey, WSBA #40756
Fisher & Phillips, LLP
1201 Third Avenue, Ste. 2750
Seattle, Washington 98101
Tel: 206-682-2308
Email: cmorisset@fisherphillips.com
         nbailey@fisherphillips.com
*Attorneys for Defendant*

**DATED** at Yakima, Washington, this 22nd day of December, 2021.

By:    s/ William D. Pickett
         William D. Pickett, WSBA NO. 27867