The Honorable Stanley A. Bastian

William D. Pickett, WSBA #27867
LARSON | GRIFFEE | PICKETT, PLLC
105 N. Third Street
Yakima, Washington 98901
Tel: 509-972-1825
bill@lgplawfirm.com
*Attorney for Plaintiff*

Luan T. Le, *pro hac vice*
Law Offices of Luan T. Le
1190 S. Bascom Ave, Suite 213
San Jose, CA 95128
Tel: 408-247-4715
Email: ledowningllp@gmail.com
*Co-counsel for Plaintiff*

Seth W. Wiener, *pro hac vice*
Law Offices of Seth W. Wiener
609 Karina Court
San Ramon, CA 94582
Tel: 925-487-5607
Email: seth@sethwienerlaw.com
*Co-counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| DEMETRIOS VORGIAS, <br><br> Plaintiff, <br><br> v. <br><br> COMMUNITY HEALTH OF CENTRAL WASHINGTON, <br><br> Defendant. | **Case No.: 1:21-cv-03013-SAB** <br><br> **PLAINTIFF DEMETRIOS VORGIAS' TRIAL BRIEF** <br><br> Trial Date: September 14, 2022 <br> Trial Time: 8:30 AM |

## I. INTRODUCTION

Plaintiff Demetrios Vorgias ("Dr. Vorgias") has brought the instant lawsuit against Defendant Community Health of Central Washington ("CHCW") for

terminating his employment in CHCW's Central Washington Family Medicine Residency Program, in violation of the Americans with Disabilities Act ("ADA"), the Washington Law Against Discrimination ("WLAD"), and the parties' contractual agreement.

## II.  FACTUAL BACKGROUND

Dr. Vorgias initiated his Bachelor of Art degree in molecular and cell biology in 1993 and graduated in 2000 from University of California, Berkeley.   He then obtained a Master of Art degree in Medical Science in 2009 from Boston University School of Medicine. Following this, Dr. Vorgias obtained his Doctor of Medicine degree from St. George's University School of Medicine in Grenada, West Indies, in 2016.

After graduating from medical school and passing Step 1, Step 2 Clinical Skills, and Step 2 Clinical Knowledge of the United States Medical Licensing Examination ("USMLE"), each on his first attempt, Dr. Vorgias applied for positions in family medicine residency programs, including the Central Washington Family Medicine Residency Program.

By operation of the algorithms used by the National Residency Matching Program, which involves applicants ranking residency programs and vice versa, Dr. Vorgias was "matched" into the Central Washington Family Medicine Residency Program.

On or about March 27, 2018, CHCW entered into a Resident Contract in Family Medicine with Dr. Vorgias.  Under Section 1 of the Resident Contract in Family Medicine, CHCW agreed "To accept Demetrios Vorgias, MD, MA, MBA as a resident physician in Family Medicine for the period beginning June 25, 2018 and ending June 24, 2019. It is agreed that intention to terminate this contract by either party be accompanied by a 30 day written notice." The Resident Contract in Family Medicine provided that the "Annual salary for this year of residency is $53,326."

PLAINTIFF'S TRIAL BRIEF

2

On or about June 25, 2018, Dr. Vorgias commenced working as a resident physician at CHCW.

Dr. Vorgias disclosed to some of CHCW's attending physicians that he had been diagnosed with Attention-Deficit/Hyperactivity Disorder and that he was struggling to use the electronic medical record system "EMR" for the residency program.  This lead to Dr. Vorgias suffering with increasing levels of anxiety as he began to struggle in the residency program.

During Dr. Vorgias' first in-patient rotation (Family Medicine Services) in October and November 2018, CHCW attending physicians began criticizing Dr. Vorgias unfairly. On numerous occasions, attending physicians mentioned that Dr. Vorgias appeared nervous or anxious while discussing cases, leading to substandard reviews from those physicians.  This also contributed to Dr. Vorgias' increasing anxiety.

On or about January 23, 2019, CHCW issued a "Consequential Citation" to Dr. Vorgias, which informed him that he "will receive an evaluation by Washington Physician Health Program "WPHP," in person, in Seattle, to determine your fitness to practice in residency."  CHCW also demanded a neuropsychological examination as part of Dr. Vorgias' evaluation with WPHP.

Dr. Vorgias was then referred by the Washington Physician Health Program "WPHP" for a neuropsychological assessment.   Vorgias Decl. at p.3, ¶11.

Afterwards, on or about February 13, 2019, CHCW informed Dr. Vorgias that he was being placed on probation.

Dr. Vorgias' neuropsychological assessment took place on April 3, 2019, and not surprisingly it was confirmed that his diagnosis included Attention Deficit Hyperactivity Disorder, "ADHD".  Dr. Vorgias was also diagnosed with Generalized Anxiety Disorder, "GAD."

On or about April 19, 2019, CHCW received a report of Dr. Vorgias' neuropsychological assessment.

Following Dr. Vorgias' neuropsychological evaluation, it was re-confirmed for CHCW that Dr. Vorgias still suffered from ADHD.  CHCW was also informed of Dr. Vorgias' GAD impairment/disability after his neuropsychological evaluation and report were complete.  Afterwards on or about April 24, 2019, CHCW informed Dr. Vorgias that his residency employment was being terminated effective immediately.

### III. PROCEDURAL BACKGROUND

On February 2, 2021, Dr. Vorgias filed his Complaint against CHCW.  The Complaint alleges that CHCW terminating Dr. Vorgias' employment in CHCW's Central Washington Family Medicine Residency Program was in violation of the American with Disabilities Act, the Washington Law Against Discrimination, and the parties' contractual agreement. It asserts causes of action: (1) Violation of the Americans with Disabilities Act; (2) the Washington Law Against Discrimination; and (3) Breach of Contract. ECF No. 1.

On April 19, 2021, CHCW filed its Answer and Affirmative Defenses. ECF No. 9.

On June 2, 2021, the Court issued a Jury Trail Scheduling Order, and set a five (5) to seven (7) days jury trial to commence on March 7, 2022.

### IV. LEGAL ANALYSIS

**A.  Plaintiff's First Cause of Action for Violation of the Americans with Disabilities Act**

    **1.  Overview of the Americans with Disabilities Act**

The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., was enacted on July 26, 1990. At the time of its enactment, some 43,000,000 Americans suffered from physical or mental disabilities. 42 U.S.C. § 12101(a)(1) (1995).  Congress determined that society had isolated and segregated individuals with disabilities. 42 U.S.C. § 12101(a)(2).  Discrimination against individuals with disabilities persisted in critical areas such as employment, housing, public accommodations, transportation,

communication, education, recreation, institutionalization, health services, voting, and access to public services. 42 U.S.C. § 12101(a)(3).

The primary purpose of the ADA was to provide a "clear and comprehensive national mandate for the elimination of discrimination" with "clear, strong, consistent, enforceable standards" to address such discrimination. 42 U.S.C. § 12101(b)(1), (2). *Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014); 42 U.S.C. § 12101(b)(1). Courts "'construe the language of the ADA broadly to advance its remedial purpose.'" *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014) (citation omitted).

The enforcement provision of Title I of the ADA, under which Dr. Vorgias has brought suit, provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

Thus, under the ADA, an employee bears the ultimate burden of proving that he is (1) disabled under the Act, (2) a "qualified individual with a disability," and (3) discriminated against "because of" the disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).

### 2. Dr. Vorgias Has a Disability

Dr. Vorgias qualifies as disabled because he has a "mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1); *see also Coons v. Sec'y of U.S. Dept. of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).

Specifically, both the Washington Physician Health Program's April 3, 2019 neuropsychological assessment and Plaintiff's expert, Scott A. Whitmer, Psy.D., have diagnosed Dr. Vorgias as having Generalized Anxiety Disorder and Attention Deficit

Hyperactivity Disorder. In addition, Dr. Whitmer also diagnosed Dr. Vorgias as having a Major Depressive Disorder.

The Ninth Circuit and a number of other circuits recognize that depression and anxiety may qualify as mental impairments under the ADA. *Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1088 (9th Cir. 2001) ("[S]tress and depression can be considered mental impairments ... under the ADA.") (citations omitted), *cert. denied,* 534 U.S. 888, 122 S. Ct. 201, 151 L. Ed. 2d 142 (2001); *Mustafa v. Clark County Sch. Dist.,* 157 F.3d 1169, 1174-75 (9th Cir. 1998); *Ogborn v. United Food & Commercial Workers Union, Local No. 881,* 305 F.3d 763, 767 (7th Cir. 2002) ("Major depression can constitute a disability under the ADA."); *Krocka v. City of Chicago,* 203 F.3d 507, 512 (7th Cir. 2000) ("Because [the employee's] severe depression is a medical condition diagnosed by a health professional, it qualifies as an impairment under the ADA."); *Criado v. IBM Corp.,* 145 F.3d 437, 442 (1st Cir. 1998) (citations omitted); *Pritchard v. S. Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir. 1996) ("Depression has been held to constitute a mental impairment."), *amended on other grounds by* 102 F.3d 1118 (11th Cir. 1996)), *cert. denied,* 520 U.S. 1274, 117 S. Ct. 2453, 138 L. Ed. 2d 211 (1997). Moreover, the ADA's administrative regulations define "mental impairment" as "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). "Depressive disorders would presumably fall under the category of emotional illness." *Gual v. AT& T Inc.,* 955 F. Supp. 346, 350 (D.N.J. 1997), *affirmed by,* 134 F.3d 576 (3rd Cir. 1998).

Dr. Vorgias' mental impairments substantially limit a major life activity – working. *See* 29 C.F.R. § 1630.2(i) (defining "working" as a "major life activity"); *see also Sommers v. City of Santa Clara,* 516 F. Supp. 3d 967, 989 (N.D. Cal. 2021) ("Working qualifies as a major life activity under the ADA."). Dr. Whitmer has opined that Dr. Vorgias' Generalized Anxiety Disorder interfered with Dr. Vorgias' performance in residency. In this regard, "[a]n impairment need not prevent, or

PLAINTIFF'S TRIAL BRIEF

6

significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). "Courts are to 'interpret the 'substantially limits' requirement broadly, and accompanying regulations specify that '[s]ubstantially limits' is not meant to be a demanding standard." *Sommers, supra,* 516 F. Supp. 3d at 989 (citations omitted).

### 3. Dr. Vorgias Is a Qualified Individual

Additionally, Dr. Vorgias is a "qualified individual" within the meaning of the ADA. "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" 42 U.S.C. § 12111(8); *see also Smith v. Clark County Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

Here, Dr. Whitmer has opined that Dr. Vorgias' "academic grades and licensing exams demonstrate the intellectual and cognitive functioning to excel." Further, Dr. Vorgias met performance standards when he was mentored and received appropriate guidance and support. *Id.* Dr. Whitmer has concluded "Dr. Vorgias is highly functional and capable of finishing out a 3-year medical residency if he is provided normal supportive supervision."

Based on the foregoing, Dr. Vorgias is capable of performing the essential functions of the medical residency position.

### 4. CHCW Discriminated Against Dr. Vorgias Based on His Disability

CHCW claims to have terminated Dr. Vorgias because of his failure to pass his rotations and purported lack of medical knowledge. These are pretext, as demonstrated by Dr. Whitmer's testimony that Dr. Vorgias "demonstrated traits and skills with patients, peers, and supervisors to be a competent doctor." Moreover, to the extent that Dr. Vorgias' mental impairment did impair his performance, such performance deficiencies are considered to be part of Dr. Vorgias' disability, rather than a separate basis for termination. *See Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128, 1139-1140 (9th Cir. 2001) ("For purposes of the ADA, with a few exceptions,

conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination. The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.") (citation omitted); *see also Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 875 (9th Cir. 1989) (there was a sufficient causal connection between the plaintiff's disability and termination where the plaintiff employee was discharged for excessive absenteeism caused by disability).

### 5. **CHCW Failed to Provide Reasonable Accommodations to Dr. Vorgias**

CHCW also discriminated against Dr. Vorgias in violation of the ADA and WLAD by having failed to engage in the interactive process, and failed to reasonably accommodate Plaintiff's disabilities.

To establish a prima facie case for disability discrimination under a failure to reasonably accommodate theory, an employee must prove that (1) she had a sensory, mental, or physical abnormality that substantially limited her ability to perform her job; (2) she was qualified to perform the essential functions of the job in question; (3) she gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 489, 84 P.3d 1231, 1236-1237 (2004). '

The fact that CHCW failed and/or refused to wait and review the neuropsychological report from an evaluation that CHCW required, demonstrates failure to engage in the interactive process. The accommodations that were included in the neuropsychological report are simple, easy to apply, and reasonable. Specifically proposed were: 1) minimal assistance with time for Cognitive Behavior Therapy, 2) additional supervision, and 3) minimal assistance with time for cognitive speech therapy. Any one of the proposed accommodations would have helped Dr. Vorgias to

PLAINTIFF'S TRIAL BRIEF

8

manage anxiety, Attention Deficit Hyperactivity Disorder, and enhance interpersonal sensitivity during his residency program.

### B. Plaintiff's Second Cause of Action for Violation of the Washington Law Against Discrimination

To prove retaliation under the Washington Law Against Discrimination, Plaintiff must establish that 1) he engaged in protected activity, 2) Defendant took an adverse employment action, and 3) there is a "causal link" between the protected activity and the adverse action. *Hines v. Todd Pac. Shipyards Corp.,* 127 Wn. App. 356, 374 n.22, 112 P.3d 522 (2005); *see also Estevez v. Faculty Club of the Univ. of Wash.,* 129 Wash. App. 774, 797, 120 P.3d 579 (2005).

Here, Plaintiff Vorgias engaged in protected activity when he participated in the WPHP neuropsychological examination that was demanded by his employer. *See* RCW 49.60.210 ("It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter."). Plaintiff further participated in protected activity when he opposed CHCW's refusal to review the neuropsychological exam findings they had requested. *Id.* Specifically, CHCW refused to review the examination findings that included requests for reasonable workplace accommodations that should have been considered and/or implemented before any termination of employment. CHCW's failure to engage in the interactive process with Dr. Vorgias following the completion of a neuropsychological examination they requested is patently discriminatory. Dr. Vorgias had no choice but to do exactly what his employer demanded --- that is, undergo a neuropsychological evaluation or face termination. Having engaged in the neuropsychological evaluation to determine fitness for duty, CHCW was required to see the process to completion. Unfortunately, CHCW terminated Dr. Vorgias without ever reviewing the final report of his evaluation that included requests for reasonable accommodations that would have addressed the struggles he faced as a result of his disabilities.

PLAINTIFF'S TRIAL BRIEF

9

Additionally, CHCW took an "adverse employment action" against Dr. Vorgias by terminating his employment. *See Burchfiel v. Boeing Corp.,* 149 Wn. App. 468, 493, 205 P.3d 145 (2009) ("To take 'adverse employment action' means to refuse to hire, *to discharge*, to demote, or *otherwise to discriminate* in compensation or *in other terms and conditions of employment*. To amount to a change in the terms and conditions of employment, an action must be more than an inconvenience or alteration of job responsibilities. ")  Defendant concedes that the termination from employment constitutes and adverse employment action. "ECF No. 69, pg.7, para. 4-5."

Dr. Vorgias' engagement in protected activity prompted CHCW's adverse action.  Courts have clarified that the "causal link" element is generally demonstrated by evidence or inferences suggesting retaliation was a "substantial factor" motivating the adverse employment decision.  *Allison v. Hous. Auth. of City of Seattle*, 118 Wash.2d 79, 96, 821 P.2d 34 (1991).  It should also be noted that the employee need not prove that the employer's sole motivation was retaliation.  *Wilmot v. Kaiser Aluminum & Chem. Corp.,* 118 Wash.2d 46, 70, 821 P.2d 18 (1991); *see also Burchfiel v. Boeing Corp.,* 205 P.3d 145, 149 Wn. App. 468 (Wash. App. 2009).  Here, CHCW took adverse employment action within days after Plaintiff completed the neuro-psychological examination before CHCW had even reviewed the exam results.  Vorgias Decl. at p. 4, ¶16.

### C.    Plaintiff's Third Cause of Action for Breach of Contract

Plaintiff's Third Cause of Action for Breach of Contract is based on the fact that "CHCW breached the Resident Contract in Family Medicine by terminating Plaintiff on April 24, 2019, without providing 30 day written notice to Plaintiff."  ECF. No. 1, ¶ 30.

"Under Washington state law, the elements of a breach of contract claim are (1) a contract imposing a duty, (2) breach of that duty, and (3) damages proximately caused by breach." *Seattle Pac. Indus. v. S3 Holding LLC,* 831 F. Appx. 814, 817 (9th Cir. 2020)

Here, there is no dispute that the Resident Contract in Family Medicine is a valid and enforceable contract, and that it required CHCW to provide 30 day written notice to Dr. Vorgias prior to terminating his employment. CHCW has admitted that it "technically breached the contract … by terminating [Dr. Vorgias] without providing 30 days' written notice." ECF No. 38, pp. 17:19-20, 18:7-8.

CHCW is expected to argue at trial that "Plaintiff suffered no resulting damage" from the breach of the contract because "[a]fter plaintiff was terminated, CHCW paid his entire salary and benefits for the 30-day notice period under the contract." ECF No. 38, p. 18:11-12. There is no Washington or Ninth Circuit law supporting CHCW's contention that its payment of salary and benefits for the 30-day notice provision excused its breach of the Resident Contract in Family Medicine, nor did it. *See Christensen v. Kroger,* 2011 U.S. Dist. LEXIS 16754, at *7 (D. Or. Feb. 13, 2011) (stated that defendant employer's termination of employee "would have breached the notice provision if he terminated the relationship without notice, which may have permitted [plaintiff employee] to recover civil damages for breach …"). Notably, the Resident Contract in Family Medicine did not permit payment in lieu of notice. Further, Dr. Vorgias was damaged by the breach of the 30-day notice provision as the sudden termination made it impossible for him to obtain another residency, and those difficulties would have been alleviated had he been given the 30-day notice required by the Resident Contract in Family Medicine.

### D.    Plaintiff's Damages

Dr. Vorgias' actual earnings while at CHCW was $43,858.30. Had CHCW not terminated him, he would have earned $52,630.00 during his first year of his medical residency. Therefore, Dr. Vorgias lost $8,771.70 in earnings for his first year of medical residency. He has also suffered a loss of earnings of $55,080.00 for his second year of residency, and $58,450.00 for his third year of residency.

According to Dr. Whitmer, Dr. Vorgias will suffer a total diminished earning capacity in the amount $1,116.530.00 as a result of the employment termination.

PLAINTIFF'S TRIAL BRIEF

11

The amount of Dr. Vorgias' emotional distress damages will be determined by a jury. No "objective evidence" is needed to establish emotional distress damages. *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) (with regard to emotional distress damages, "[w]hile objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in ... the Ninth Circuit, or the Supreme Court.") (citation omitted). Indeed, emotional distress damages may be based solely on testimony, such as the testimony that will be proffered from Dr. Vorgias and his wife concerning the severe upset, distress, shame and mortification suffered by Dr. Vorgias as a result of CHCW's termination of his fledgling medical career. *See, e.g., Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (9th Cir. 1985) (upholding emotional damages based solely on testimony); *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994) (noting that emotional damages may be awarded based on testimony alone or appropriate inference from circumstances); *Carey v. Piphus*, 435 U.S. 247, 264 n.20, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978) (noting that emotional distress damages are "essentially subjective" and may be proven by reference to injured party's conduct and observations by others). Based on jury verdicts in other cases, Dr. Vorgias anticipates an emotional distress award in the mid to high six figure range. *See, e.g., Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510-514 (9th Cir. 2000) (upholding a $1,000,000 compensatory emotional distress damage award); *Bihun v. AT&T Information Systems, Inc.,* 13 Cal. App. 4th 976, 997 (1993) (holding that an award for $ 662,000 emotional distress based on six months of harassment was not excessive); *Iwekaogwu v. City of Los Angeles*, 75 Cal. App. 4th 803, 821 (1999) (plaintiff was awarded $450,000 in emotional distress damages harassment that caused him to suffer stress, nightmares, and family problems).

In summary, Dr. Vorgias' damages are as follows:

| | |
|---|---|
| Past Lost Wages | $122,302.00 |
| Diminished Earning Capacity Loss | $1,116,430.00 |
| Emotional Distress | to be determined by jury |
| Total Losses & Damages | $1,238,732.00 (not including emotional distress damages) |

### E. Reinstatement of Dr. Vorgias' Employment

Lastly, the Court should reinstate Dr. Vorgias' employment as a resident physician at CHCW. The Ninth Circuit has made clear that "reinstatement is the preferred remedy [for discriminatory discharge] …" *Teutscher v. Woodson*, 835 F.3d 936, 951 (9th Cir. 2016) (citation omitted). Reinstatement is appropriate here as there is not "excessive hostility or antagonism between the parties" that would render reinstatement practically infeasible, nor would reinstating Dr. Vorgias unfairly cause the displacement of another CHCW employee. *See id*. Most importantly, reinstatement is necessary as it is unlikely that Dr. Vorgias could be matched for a medical resident due to how CHCW handled the termination of his first-year medical residency.

## V. CONCLUSION

Plaintiff looks forward to vindicating his employment rights at trial, obtaining the monetary compensation due to him, and reinstatement of his employment at CHCW.

Respectfully submitted, August 18, 2022.

| | |
|---|---|
| LARSON \| GRIFFEE \| PICKETT, PLLC<br>By: s/William D. Pickett<br>105 N. Third Street<br>Yakima, Washington 98901<br>Tel: 509-972-1825<br>bill@lgplawfirm.com<br>*Attorney for Plaintiff* | LAW OFFICES OF SETH W. WIENER<br>By: s/Seth W. Wiener<br>Seth W. Wiener, CSBA #203747<br>609 Karina Court<br>San Ramon, CA 94582<br>Email: sethwiener@yahoo.com<br>*Attorney for Plaintiff – Pro Hac Vice* |
| LAW OFFICES OF LUAN T. LE<br>By: s/Luan Le<br>Luan T. Le. CSBA #171029<br>1190 S Bascom Avenue, Suite 213<br>San Jose, CA 95128<br>Email: ledowningllp@gmail.com<br>*Attorney for Plaintiff – Pro Hac Vice* | |

# CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Luan T. Le, *pro hac vice*
Law Offices of Luan T. Le
1190 S. Bascom Ave, Suite 213
San Jose, CA 95128
Tel: 408-247-4715
Email: ledowningllp@gmail.com
*Co-counsel for Plaintiff*

Seth W. Wiener, *pro hac vice*
Law Offices of Seth W. Wiener
609 Karina Court
San Ramon, CA 94582
Tel: 925-487-5607
Email: seth@sethwienerlaw.com
*Co-counsel for Plaintiff*

Catharine Morisset, WSBA #29682
Fisher & Phillips, LLP
1201 Third Avenue, Ste. 2750
Seattle, Washington 98101
Tel: 206-682-2308
Email: cmorisset@fisherphillips.com
          smichael@fisherphillips.com
          cbelnavis@fisherphillips.com
*Attorneys for Defendant*

**DATED** at Yakima, Washington, on the 18th day of August, 2022.

By: s/ William D. Pickett
William D. Pickett, WSBA NO. 27867

PLAINTIFF'S TRIAL BRIEF

14