FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Sep 09, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEMETRIOS VORGIAS, | |
| Plaintiff, | No. 1:21-CV-03013-SAB |
| v. | |
| COMMUNITY HEALTH OF CENTRAL WASHINGTON, | **PRETRIAL ORDER** |
| Defendant. | |

The Court held a pretrial conference in the above-captioned matter on August 31, 2022 in Yakima, Washington. Plaintiff was represented by William Pickett. Defendant was represented by Catharine Morisset and Clarence Belnavis.

At the pretrial conference, the parties stated that they stipulated and agreed to the Court signing and entering their proposed Joint Pretrial Order. Thus, the Court enters the parties' Joint Pretrial Order into the record.

Accordingly, **IT IS HEREBY ORDERED:**

I.       <u>**NATURE OF PROCEEDINGS AND STATEMENT OF JURISDICTION**</u>

The following facts are agreed upon by the parties and require no proof:

1.       This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332(a)(1), and 1367.

**PRETRIAL ORDER** # 1

2.      Plaintiff Demetrios Vorgias ("Plaintiff") filed a lawsuit against Defendant Community Health of Central Washington in the United States District Court in the Eastern District of Washington in Yakima, Washington, on February 2, 2021.

3.      The Complaint alleged three causes of action: (1) violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; (2) violation of the Washington Law Against Discrimination; and (3) breach of contract. ECF No. 1 at 4.

4.      On March 28, 2018, Plaintiff signed a first year Resident Contract in Family Medicine with Defendant.

5.      The term of the contract was June 25, 2018, through June 24, 2019.

6.      The residency contract could be terminated by either Plaintiff or Defendant upon 30 days' written notice.

7.      Plaintiff was employed by Defendant from June 25, 2018 to May 1, 2019.

II.    **PLAINTIFF'S CONTENTIONS**

Plaintiff's contentions as to disputed issues are as follows:

1.      Defendant knew that Plaintiff suffered from mental disabilities/impairments, including Attention Deficit Hyperactivity Disorder ("ADHD") and Generalized Anxiety Disorder ("GAD").

2.      Defendant knew that Plaintiff's impairments necessitated reasonable workplace accommodations.

3.      Defendant required Plaintiff undergo medical examination to determine (1) the extent of impairments/disabilities; and (2) which reasonable accommodations would assist Plaintiff in succeeding in Defendant's residency program.

//

//

**PRETRIAL ORDER** # 2

4.      Defendant failed to follow its own formal remedial procedures regarding the termination of Plaintiff's employment from the Community Health of Washington residency program.

5.      Defendant failed to engage in the interactive process regarding reasonable accommodation for Plaintiff.

6.      Defendant prematurely and improperly terminated Plaintiff despite the availability of reasonable accommodations to address disabilities and/or impairments.

7.      Defendant retaliated against Plaintiff as a result of his participation to seek reasonable workplace accommodations for disabilities/impairments.

8.      Plaintiff's reasonable workplace accommodations did not create an undue burden for Defendant. Plaintiff took reasonable steps to mitigate the harm caused by Defendant's discriminatory actions.

## III.    <u>DEFENDANT'S CONTENTIONS</u>

Defendant's contentions as to disputed issues are as follows:

1.      Plaintiff graduated from medical school in 2016.

2.      Medical residents are placed into residency programs through a matching process run by the National Resident Matching Program (NRMP).

3.      Briefly, each applicant ranks the residency programs in the order of their preference, and each residency program does the same with applicants. NRMP then matches the applicants to the residency programs using an algorithm.

4.      In 2016, Plaintiff participated in the match process but was not selected by any residency program as a match.

5.      In 2017, Plaintiff participated in the match process but was not selected by any residency program as a match.

6.      In 2018, Plaintiff participated in the match process and matched with CHCW.

//

**PRETRIAL ORDER** # 3

7.      Plaintiff's Resident Contract provided that extended personal leave could be granted at the discretion of the Program Director for compelling personal reasons.

8.      Plaintiff never requested extended personal leave during his employment with Defendant.

9.      Each resident is assigned a Faculty Advisor.

10.     The Faculty Advisor's role is to collect feedback and discuss it with the resident.

11.     A resident may request a change of Faculty Advisor once a year if there are conflicts or discomfort in the relationship.

12.     Plaintiff was assigned Dr. Caitlin Hill as a Faculty Advisor.

13.     "Residents are subject to continuous performance evaluation, with regard to the six core competencies: patient care, medical knowledge, practice-based learning and improvement, interpersonal and communication skills, professionalism, [and] systems-based practice."

14.     The number-one goal of the CHCW resident evaluation system is to "[a]ssure the safety of patients."

15.     There are three levels of advancement in the CHCW residency program: R1, R2, and R3.

16.     "For advancement to the next level [*e.g.*, R1 to R2], acceptable progress meeting milestones in the seven core competencies needs to be documented. Additionally, the Resident must be judged competent to supervise others (R1's and students), and to act with limited independence."

17.     On September 17, 2018, Nurse Joy Gay reported to Dr. Hill, Plaintiff's advisor, several concerns about Plaintiff, including that he asked her to accompany him to an exam "to make sure he was doing it right," instead of asking his attending doctor for help, that he asked about discharging a mother to be with

**PRETRIAL ORDER** # 4

her baby without knowing facts about the mother or baby; and that he "was unsafe in the state of fatigue and frustration he was in."

18.     On October 1, 2018, Dr. Tiffany Mark reported her concerns about Plaintiff to his Faculty Advisor, Dr. Hill, including that he showed up for rounds late and not dressed appropriately; he did not complete his notes despite Mark "spen[ding] hours with him on making sure he understood the work flows"; and he failed to complete a physical exam on a patient because the patient was sleeping, which Mark reported was "incredibly concerning."

19.     CHCW's Committee Addressing Residents Experiencing Difficulty (CARED) was formed to help residents who were struggling in the program.

20.     In or around 2018, Plaintiff informed Dr. Hill that he was struggling with the Electronic Medical Record (EMR) system "and that's when I told her I have ADHD, and this can make it a little more difficult."

21.     Plaintiff did not ask for any "specific" accommodations at the time.

22.     Plaintiff told Dr. Hill about his ADHD "in the context of I need help just making [the EMR system] do what I needed it to do."

23.     Dr. Hill also arranged for Plaintiff to get extra help with the EMR system from senior residents, including Dom Nguyen, Tess Ish-Shalom, and Tiffany Mark. Dr. Hill also worked with Plaintiff to help him learn the EMR system, and she offered him additional training, which he rejected.

24.     Plaintiff later sought help from senior residents on the EMR systems "and figured it [the EMR system] out on my own."

25.     Plaintiff did not ask Drs. Miller, Pearson, and McCloud for any job modifications because of the ADHD.

26.     Plaintiff never asked Program Directors Dr. Russell Meier or Dr. Micahlyn Powers or HR Director Laura McClintock for any accommodations related to his ADHD.

27.     On October 23, 2018, CARED discussed Plaintiff's performance.

**PRETRIAL ORDER** # 5

28.     The committee reviewed both positive and negative feedback about Plaintiff's performance.

29.     CARED considered that both Dr. Katina Rue and Dr. MacLeod expressed concerns about Plaintiff's medical knowledge.

30.     CARED recommended placing Plaintiff on the first stage of the citation process—a constructive citation.

31.     Plaintiff received a Constructive Citation on October 23, 2018.

32.     CARED recommended "[t]asking [Plaintiff] to find a system that works for him in order to keep him organized."

33.     CARED also recommended asking Dr. Mark Bauman shadow Plaintiff because of concerns about Plaintiff's interactions with patients.

34.     On October 31, 2018, Dr. Bauman shadowed Plaintiff for more than two hours.

35.     Dr. Bauman reported back to Hill and others concerns he had with Plaintiff's performance.

36.     On November 14, 2018, Dr. Carlin Miller, an attending physician, reported serious concerns about Plaintiff's performance to his advisor Dr. Hill, including: (i) on the last day of the OB rotation, Plaintiff told Dr. Miller that he still did not know how to do many things he should have known how to do at that point; (ii) Plaintiff "showed a significant lack of ability to triage his day and get things done in a timely manner"; (iii) it took Plaintiff a significant amount to time to discharge two patients despite there being "very little to do to make it happen"; (iv) Plaintiff "frequently ask[ed] questions that he should have known the answers to or should have known where to get the information"; (v) Plaintiff failed to complete physical exams on 6-8 patients despite seeing them in rounds.

37.     Dr. Miller reported to Dr. Hill that "[i]n general there was a complete lack of insight that he was performing well below expected level. I spent nearly the

entire shift there, as long as we had anything active going on, because I did not feel good about leaving the floor and him alone to manage it."

38.    To safely treat patients, it is crucial that doctors be able to self-diagnose their own weaknesses and knowledge gaps so that they are able to educate themselves or seek help when necessary.

39.    On January 23, 2019, CARED met to discuss Plaintiff's progress.

40.    On January 24, 2019, Dr. Powers and Dr. Hill met with Plaintiff and placed him on a Consequential Citation, which indicates "areas of concern significant enough to require the Resident and faculty to develop a formal plan of corrective action."

41.    The primary reasons for the Consequential Citation were concerns about professionalism; lack of medical knowledge; concerns for patient safety and decision making; and inappropriate interactions with female faculty, staff, and peers.

42.    CARED's concerns about Plaintiff's professionalism was based in part on:

   a.    Plaintiff's failure to complete required administrative tasks, such as logging didactic attendance, procedure loggings, and CKSAs [clinical knowledge, skills, and abilities];

   b.    Plaintiff's failure to notify BHC that he was running late to a shadowing opportunity;

   c.    Plaintiff's lack of preparation for working the clinic and knowledge of patients' medical conditions before their visits;

   d.    Plaintiff's inability to stay on time in the clinic and failure to communicate with his preceptors, patients, and nursing team.

//

//

//

**PRETRIAL ORDER** # 7

43.    CARED's concern about Plaintiff's lack of medical knowledge was based in part on:

    a.    Plaintiff's failure to consistently take accurate patient histories, perform physical exams, and develop a basis for differential diagnosis and plan for outpatients and inpatients in both clinic and hospital settings.

    b.    Plaintiff's failure to ask for supervision by appropriate attending physicians when needed, and instead asking for nursing supervision.

44.    CARED's concerns for patient safety and decision making was based in part on:

    a.    Plaintiff's documentation of an after-hours call from a patient with chest pain and heart palpitations did not include that she should call 911 instead of driving herself to the hospital.

    b.    Plaintiff documented that he performed a physical exam without actually performing the exam, which Powers noted was fraudulent.

45.    Plaintiff's inappropriate interactions with female faculty, staff, and peers, included that Plaintiff was overly familiar with women, called them "love," and commented on their physical appearance.

46.    The Consequential Citation required Plaintiff to follow an action plan, which included: (1) timely responding to messages, refill requests, and labs; (2) arriving on time for clinic, shadow experiences, meetings, shifts, and rotations; (3) completing didactic attendance logging, CKSA, and procedure logging by February 21, 2019; (4) arriving at the family medicine clinic by 8 a.m. having chart-prepped the night before; (5) being shadowed in the clinic by a faculty member for the next month; (6) be evaluated by the Washington Physician Health Program (WPHP) "to determine your fitness to practice in residency;" (7) make up

**PRETRIAL ORDER** # 8

his failed Family Medicine rotation; (8) working closely with preceptors to diagnose clinic patients; (9) contacting the Employee Assistance Program (EAP) for help with the stress of residency; (10) receiving additional training on the computer systems, and being excused from clinical duties to complete this training; and (11) receiving additional shadowing and mentoring to help with workflows and efficiency.

47.    During the meeting to discuss this Consequential Citation and action plan, Plaintiff did not raise that he had ADHD, an anxiety disorder, or any impairment or that he needed an accommodation to perform his essential job functions.

48.    On February 4, 2019, Dr. Patrick Moran reported an incident that occurred in September 2018. At an appointment for a transvaginal ultrasound exam, the patient had her feet in stirrups with a sheet covering her legs. Before the appointment, Dr. Moran had asked Plaintiff to stand by the wall and simply observe the procedure on a screen, but in the exam, Plaintiff walked up to the patient without being asked and pulled the sheet up over her knees. Dr. Moran reported that this was highly inappropriate behavior and that it caused the patient to feel uncomfortable.

49.    Dr. Moran also reported to Hill that Plaintiff "had not prepared at all in terms of knowing which studies his patients needed, what the indications were nor what elements of the studies were. This is atypical, as the residents have several resources spelled out for them—including the survival guide, which just happened to contain virtually all of the information he needed to be successful on that day."

50.    During Plaintiff's second Family Medical Service (FMS) rotation, CHCW assigned Dom Nguyen, a senior resident, to work with Plaintiff to help him identify where he was struggling and how to improve those areas.

**PRETRIAL ORDER** # 9

51.    Plaintiff believed Nguyen made up his mind about Plaintiff too quickly and was not helpful.

52.    Plaintiff responded by avoiding Nguyen and told Nguyen "you are not helping me."

53.    Dr. Nguyen responded by trying to help Plaintiff.

54.    Dr. Nguyen also provided feedback to the CARED committee after shadowing Plaintiff for three half days. Nguyen reported serious concerns with Plaintiff's poor insight into what was causing his performance issues; poor medical knowledge; inattention to detail; not following Nguyen's coaching and suggestions to improve his performance; and not doing the work necessary to improve his performance, *i.e.*, being lazy.

55.    On February 13, 2019, Dr. Ragina Lancaster provided Dr. Hill feedback about Plaintiff. She expressed serious concerns about Plaintiff's (1) communications with patients, patients' family, social workers, and other staff and (2) medical knowledge, providing examples supporting each concern.

56.    That day CARED reviewed feedback about Plaintiff from Carlin Miller, Hill, and Rue in addition to the feedback from Nguyen.

57.    In Dr. Rue's feedback, she stated "I agree with Carlin [Miller] that [Plaintiff] is a detriment to the team and is a risk as far as patient safety. I do not feel comfortable with him communicating accurate information to me, to consultants, nursing staff or families. This potentially [a]ffects patient care in a negative way. I would urge [yo]u to remove him from the service [*i.e.*, the hospital]."

58.    On February 13, 2019, after reviewing and discussing the feedback, CARED moved Plaintiff to the next step of the remediation plan: Probation.

59.    Plaintiff was placed on Probation on February 13, 2019.

60.    As part of the "action plan" accompanying the Probation, CHCW provided Plaintiff with help for the EMR system: "You will be shadowed in your

**PRETRIAL ORDER** # 10

family medicine clinic by a faculty member in the next 1 mo, with special attention paid to EMR efficiency."

61.    CARED also noted that Plaintiff had been offered additional trainings on the EMR system, which he had refused.

62.    On the afternoon of February 13, 2019, Dr. Powers emailed all CHCW faculty to inform them of changes to Plaintiff's curriculum. Plaintiff would no longer participate in the Family Medicine Service (FMS); instead, he was to perform extra clinic shifts. Dr. Powers also notified faculty that Plaintiff must precept all patients with an attending doctor and that "the attending MUST see every patient, and likely repeat the Hx [history], PE [physical examination], and confirm the A&P [assessment and plan]."

63.    On February 15, 2019, Laura Moss, WPHP Associate Medical Director, notified Dr. Powers via email that Plaintiff "attended his scheduled appointment with the (WPHP)…Based on this meeting with Dr. Plaintiff there was no evidence of current impairment."

64.    Dr. Moss's email also stated that Plaintiff would be "undergoing additional evaluation from an outside provider to rule out an underlying medical condition that could affect his ability to practice with reasonable safety to patients."

65.    On February 26, 2019, CARED met and discussed Plaintiff's progress. CARED noted that Plaintiff had made progress with respect to responding to messages, appropriate behavior with the nursing staff, and his clinical case studies. Nonetheless, CARED noted there were still areas that needed to improve.

66.    On February 27, 2019, CARED provided its feedback and plan to Plaintiff. The plan stated that Plaintiff would begin another FMS rotation on April 1, 2019, and "You must pass this rotation in order to continue your residency training.

**PRETRIAL ORDER** # 11

67.     After receiving the feedback and plan, Plaintiff did not raise any concerns about a medical or mental health impairment or request any accommodations.

68.     On April 17, 2019, CARED met to discuss Plaintiff's progress. CARED noted that Plaintiff's "patient presentations continue to be scattered, disorganized. Sometimes able to answer attending questions but seems to lack common sense in ability to approach a patient case…Misses critical information in H&P, differential diagnoses are shallow, and despite writing 2 cases about sepsis criteria he could not identify that a COPD patient met criteria for sepsis."

69.     CARED further noted that Plaintiff was not reviewing at least one evidence-based article related to his patients' condition despite being required and reminded to do so.

70.     Nursing staff at Virginia Mason Hospital stated that Plaintiff "still put in orders for blood draw, after this was already discussed and the plans were to not do any lab draws. This upset the family and nursing staff."

71.     Nora Kirschner provided feedback that Plaintiff's "knowledge is below that of a medical student. Doesn't know acid base disorders or where to look up about them."

72.     Based on this feedback and discussion, CARED concluded that it had "Ongoing grave concerns about decision making, organizational skills, comprehension, and ability to complete tasks on time and follow a plan…If he does not pass his FMS rotation, he will be discharged from the program."

73.     After the meeting, Dr. Powers emailed the FMS attending doctors and asked them "when you work with R1 Demetrios Vorgias in the next few weeks on FMS, that you think very hard about whether he is meeting expectations or not, as compared to other R1 residents. His final evaluations are very important in assessing his progress."

//

**PRETRIAL ORDER** # 12

74. On April 18, 2019, via email, Dr. Powers asked Cynthia Morales, WPHP Clinical Coordinator, for an update on Dr. Vorgias's evaluation.

75. The next day, Morales responded via email that "[b]ased on this evaluation, there was no current identified impairment due to an underlying medical condition."

76. Morales continued: "[w]e are recommending to [Plaintiff] enrollment in monitoring with our organization in order to monitor underlying medical conditions. We want to monitor these conditions in order to prevent future impairment."

77. Morales stated "[w]e emphasize to all residency programs and employers that they may continue their own disciplinary processes in tandem with our own."

78. Morales did not identify any specific medical conditions or reasonable accommodations.

79. On April 23, 2019, Dr. Midhuna Papazian provided feedback to Dr. Powers. Dr. Papazian did rounds with Plaintiff to observe him with a patient and assess how he was doing. Dr. Papazian reported that "[p]rior to my rounding with him, we sat down and talked about the things we would ask the patient and he kept missing the main points during the interview." She continued "I have rounded on patients after [Plaintiff] has seen them and they seem confused about the information that he shares with them. I don't feel like it's the right thing for patient care for him to round on patients by himself."

80. Papazian concluded: "I know we all want Demetrios to succeed but I really don't see how he is going to practice medicine successfully."

81. Plaintiff agrees that he failed to pass his FMS rotation during the block beginning on October 15, 2018.

82. Plaintiff agrees that he failed to pass the FMS rotation for a second time during the block beginning on February 4, 2019.

**PRETRIAL ORDER** # 13

83.    Plaintiff agrees that he failed to pass the FMS rotation for a third time during the block beginning on April 1, 2019.

84.    Powers observed Plaintiff and noted that among the list of his greatest difficulties was "he had difficulty synthesizing information, he had difficulty making an assessment that was accurate, and he had difficulty making a plan to manage the medical conditions and with counseling patients as far as explaining what the plan and options are."

85.    On April 24, 2019, CARED met to discuss Plaintiff's progress and determined that terminating his residency employment was necessary.

86.    As the Program Director, Dr. Powers was the final decision-maker for Plaintiff's termination.

87.    On April 26, 2019, Dr. Ravneet Dhaliwal, CHCW attending doctor, provided feedback about Plaintiff's progress, including that Plaintiff "[l]acks basic skills" and her "[c]oncern for patient safety with appropriate transfer of care."

88.    On May 1, 2019, Plaintiff was informed of his termination from the CHCW residency program.

89.    Plaintiff was paid his entire salary under the contract for 30 days after his termination.

90.    Plaintiff's termination notice provided a grievance procedure.

91.    Plaintiff did not grieve his termination.

92.    On May 7, 2019, Plaintiff first learned of his diagnosis with Generalized Anxiety Disorder (GAD).

93.    On May 8, 2019, Plaintiff shared the GAD diagnosis with Dr. Powers.

94.    That same day, Plaintiff shared that he believed his GAD prevented him from displaying his medical knowledge.

95.    In the same email, Plaintiff made no mention of his ADHD.

96.    Plaintiff asked Dr. Powers to allow him to retake an EKG exam that he had failed.

**PRETRIAL ORDER** # 14

97.    Dr. Powers allowed him to retake the exam.

## IV.    ISSUES OF FACT

The following are the issues of fact to be determined by trial:

1.    Was Plaintiff "disabled" under the ADA during his employment with CHCW?

2.    Was Plaintiff "disabled" under the WLAD during his employment with CHCW?

3.    Did CHCW have notice of Dr. Plaintiff' alleged disability before it terminated his employment as a first-year resident?

4.    Did Plaintiff give CHCW notice of his disability and desire for a reasonable accommodation?

5.    Did Defendant retaliate against Plaintiff?

6.    Was Dr. Plaintiff's disability a substantial factor in CHCW's decision to terminate his employment?

7.    Did CHCW and Dr. Plaintiff enter into an employment contract for a fixed term?

8.    Did CHCW materially breach a contract with Dr. Plaintiff by ending his employment before June 24, 2019?

9.    Did Plaintiff unreasonably fail to take advantage of work opportunities available to him after he was terminated?

10.    Did CHCW act maliciously, oppressively, or in reckless disregard of Dr. Plaintiff's rights when it discharged him or allegedly failed to accommodate him, such that punitive damages are appropriate?

11.    What amount of compensatory damages is Dr. Plaintiff owed under the WLAD or ADA?

12.    What amount of punitive damages, if any, is Dr. Plaintiff owed under the ADA?

**PRETRIAL ORDER** # 15

13.     If CHCW materially breached Plaintiff's contract, what are his contract damages?

## V.     **ISSUES OF LAW**

The following are the issues of law to be determined by the Court:

1.     Is Plaintiff entitled to reinstatement or front pay in lieu of?

2.     What is the correct measure of front pay (ADA)? *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 846 (2001).

3.     Is Plaintiff entitled to back pay?

4.     If awarded by the jury, the correct amount of punitive damages and/or compensatory in light of the cap under 42 U.S.C. § 1981a(b) (ADA claims only)?

## VI.     **EXHIBITS**

The following exhibits may be received into evidence, if other admissible, without further authentication, once determined that each is what it purports to be:

### PLAINTIFF'S EXHIBITS

| Ex No. | Description | Bates No. | Admit | Auth. Admitted | Admiss. Disputed |
|---|---|---|---|---|---|
| 1. | CWFM Residency Program Resident Handbook | Not Provided; Produced as ECF No. 71-1 | Pre-Admit | Y | |
| 2. | CWFM "resident Contract in Family Medicine." | Not Provided; Produced as ECF No. 71-2 | Pre-Admit (formerly 205) | Y | |
| 3. | CWFM Residency Verification of Graduate Medical Education & Training | Not Provided; Produced as ECF No. 71-3 | Pre-Admit | Y | |

**PRETRIAL ORDER # 16**

| Ex No. | Description | Bates No. | Admit | Auth. Admitted | Admiss. Disputed |
|---|---|---|---|---|---|
| 4. | December 11, 2019 letter from Dr. Moss, MD and C. Morales, (WPHP) | Not Provided; Previously produced as ECF No. 71-4 | | Y | FRE 802; 602; 701. *See* ECF No. 99 at 5-6 and ECF No. 110 at 1-3. |
| 5. | April 19, 2019 email from C. Morales to Dr. Powers | Not Provided; Produced as ECF No. 71-5 | Pre-Admit (formerly 235) | Y | |
| 6. | Undated Letter from Dr. Kelly Cornett | Not Provided; Produced as ECF No. 71-6 | | N | FRE 402, 403, 802, 901. |
| 7. | Plaintiff Demetrios Plaintiff's Supplemental Initial Disclosure re: Damages | Not Provided; Previously produced as ECF No. 71-7 | | Y | FRE 602; 702, 703, 802; 1002 |
| 8. | Plaintiff's FRCP 26 Initial Expert Witness Disclosure & Report of Dr. Scott Whitmer | Not Provided; Previously produced as ECF No. 71-8 | | Y | FRE 702, 703, 802. *See* ECF No. 70; No. 99 at 13-15; No. 110 at 8 |

**PRETRIAL ORDER # 17**

| Ex No. | Description | Bates No. | Admit | Auth. Admitted | Admiss. Disputed |
|---|---|---|---|---|---|
| 9. | Seven Letters of Recommendation | Not Provided; Previously produced as ECF No. 71-9 | | N | FRE 402, 403, 702, 703, 802. ECF No. 70. *See* ECF No. 99 at 8; ECF No. 110 at 4-5. |
| 10. | Medical Residency Jobs Plaintiff Applied to via Medical Residency Portal | Not Provided; Produced as ECF No. 71-10 | | Y | FRE 802. |
| 11. | St. George's University Medical Student Performance Evaluation | Not Provided; Produced as ECF No. 71-11 | | N | FRE 402, 403, 802, 901. |
| 12. | ACGME Institutional Requirements | Not Provided; Produced as ECF No. 71-12 | | N | FRE 403, 802, 901. |
| 13. | ACGME Program Requirements for Graduate Medical Education in Family Medicine | Not Provided | | N | FRE 403, 802, 901. |

**PRETRIAL ORDER** # 18

**DEFENDANT'S EXHIBITS**

| Ex. No. | Description | Bates Nos. | Admit | Auth. Disputed | Admiss. Disputed |
|---|---|---|---|---|---|
| 200. | 2016 Resident Handbook | CHCW 000001-10 | | N | FRE 403; Relevance; Foundation |
| 201. | ACGME Program Requirements | CHCW 000011-20 | | N | FRE 403; Relevance; Foundation; Incomplete |
| 202. | Resident Professional-ism Agreement and Accountabilit y Policy (4/22/18) | CHCW 000258-259 | | N | FRE 802 – Hearsay; FRE 403; Relevance; Foundation |
| 203. | Standards of Behavior Agreement (6/27/18) | CHCW 000189 | | N | FRE 802 – Hearsay; FRE 403; Relevance; Foundation |
| 204. | 10/1/2017 Plaintiff Residency Application materials | CHCW 000228-243; 255-257 | | N | |
| 205. | R 1 FMS Evaluation | CHCW 000126-135 | | N | FRE 802 – Hearsay |
| 206. | EKG Selective Evaluation | CHCW 000162 | | N | FRE 802 – Hearsay |
| 207. | Resident Individual Learning Plan | CHCW 0000146-156 | | N | FRE 802 – Hearsay |
| 208. | 7/19/2018 Self Evaluation | CHCW 000097-98 | | N | FRE 802 – Hearsay |

**PRETRIAL ORDER** # 19

| Ex. No. | Description | Bates Nos. | Admit | Auth. Disputed | Admiss. Disputed |
|---------|-------------|------------|-------|----------------|------------------|
| 209. | 9/17/18 Email from J. Gay | CHCW 000044 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 210. | 10/1/2018 Email from T. Mark | CHCW 000045-46 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 211. | Resident Individual Learning Plan | CHCW 000047-50 | | N | Relevance |
| 212. | CARED Committee Description | PLAINTIFF 00039-45 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 213. | 10/23/2018 CARED Meeting re Constructive Citation | CHCW 000051-52 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 214. | 10/23/2018 New Innovations Evaluation by Dr. Hill | PLAINTIFF 000080-83 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 215. | 10/24/2018 Quarterly Review / Constructive Citation | CHCW 000102-103 | | N | FRE 802 – Hearsay |
| 216. | 11/4/2018 Email from Dr. Bauman | CHCW 000055-56 | | N | FRE 802 – Hearsay |
| 217. | November 14, 2018 Email from Dr. Miller | CHCW 000053-54 | | N | FRE 802 – Hearsay |

**PRETRIAL ORDER** # 20

| Ex. No. | Description | Bates Nos. | Admit | Auth. Disputed | Admiss. Disputed |
|---|---|---|---|---|---|
| 218. | 2018-2019 Rotation Comparison | CHCW 000184-186 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 219. | 2018 American Board of Family Medicine In Training Examination Performance Report | CHCW 000167 | | N | FRE 802 – Hearsay; Foundation; Misleading |
| 220. | 1/23/2019 Consequential Citation by CARED Committee | CHCW 000058-60 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 221. | 1/23/2019 Quarterly Review | CHCW 000163-164 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 222. | 1/28/2019 Email from Dr. Hill to faculty re Consequential Citation | CHCW 000057 | | N | FRE 802 – Hearsay; FRE 403; Misleading; Prejudicial |
| 223. | 2/4/2019 Email from Dr. Moran | CHCW 000061-62 | | N | FRE 802 – Hearsay; FRE 403; Misleading; Prejudicial |
| 224. | 2/10/2019 New Innovations Review by Dr. Rue | PLAINTIFF 000210-213 | | N | FRE 802 – Hearsay; FRE 403; Misleading; Prejudicial |

**PRETRIAL ORDER** # 21

| Ex. No. | Description | Bates Nos. | Admit | Auth. Disputed | Admiss. Disputed |
|---------|-------------|------------|-------|----------------|------------------|
| 225. | 2/13/2019 Pre-reading for CARED Meeting | CHCW 000066-71 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 226. | 2/13/2019 CARED Meeting regarding probation | CHCW 000072-75 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 227. | CARED to Dr. Plaintiff/Probation | CHCW 000091-94 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 228. | 2/13/2019 Email from Dr. Lancaster | CHCW 000064-65 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 229. | 2/13/2019 Email from Dr. Powers | CHCW 000076 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 230. | 2/15/2019 Letter from Dr. Moss to Dr. Powers | CHCW 000077 | | N | FRE 802 – Hearsay |
| 231. | 2/26/2019 CARED Meeting regarding remaining on Probation | CHCW 000165-166 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 232. | March 2019 "Clinical Question" emails with Dr. Powers | CHCW 000206-227 | | N | FRE 802 – Hearsay; FRE 403; Misleading |

**PRETRIAL ORDER** # 22

| Ex. No. | Description | Bates Nos. | Admit | Auth. Disputed | Admiss. Disputed |
|---|---|---|---|---|---|
| 233. | 4/17/ 2019 CARED Meeting re Probation | CHCW 000078-79 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 234. | 4/23/2019 Emails re "Vorgias FMS Evaluations" | CHCW 000084 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 235. | 4/23/2019 Email from Dr. Papazian | CHCW 000080 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 236. | 4/24/2019 CARED Meeting re termination | CHCW 000087-88 | | N | FRE 802 – Hearsay; FRE 403; Misleading |
| 237. | 4/24/2019 Quarterly Review | CHCW 000089-92 | | N | FRE 802 – Hearsay; FRE 403; Misleading; Foundation |
| 238. | 4/26/2019 Email from Dr. Dhaliwal | CHCW 000085-86 | | N | FRE 802 – Hearsay |
| 239. | 5/1/2019 "On the Fly Resident Evaluation" by Dr. Dhaliwal | VORGIAS 000186 | | N | FRE 802 – Hearsay; FRE 403; Misleading; Foundation |
| 240. | 5/8/2019 Email from Dr. Powers to Plaintiff | CHCW 000095-96 | | N | FRE 802 – Hearsay |

**PRETRIAL ORDER** # 23

| Ex. No. | Description | Bates Nos. | Admit | Auth. Disputed | Admiss. Disputed |
|---------|-------------|------------|-------|----------------|------------------|
| 241. | List of jobs Plaintiff applied to after separation of employment | PLTF 001155 | | N | FRE 403; Incomplete |
| 242. | 2017 Resume | CHCW 000261 | | N | |
| 243. | 2021 Resume | PLTF 000145-147 | | N | |
| 244. | November 3, 2020 EEOC Dismissal Notice | VORGIAS 000254-255 | | N | FRE 802 - Hearsay; FRE 403; Misleading; Foundation |
| 245. | Shelly Lewis, MA, CRC, CLCP, ABVE/D CV Expert Report dated November 4, 2021 | 11/5/, 2021 | | N | FRE 802 – Hearsay; Relevance |
| 246. | Shelly Lewis, MA, CRC, CLCP, ABVE/D CV | 11/5/2021 2021 | | N | FRE 802 – Hearsay; Relevance |

Other than for impeachment purposes, the only exhibits admitted at trial will be exhibits identified herein or on a supplemental list filed at least 14 days before trial, or at such earlier date as may have been set by the Court, which supplemental list shall bear counsel's certificate that opposing counsel has had an opportunity to examine the exhibits.

Objections to exhibits, except as to relevancy, must be heard prior to trial.

//

//

**PRETRIAL ORDER** # 24

## VII.    <u>**WITNESSES**</u>

**A.    Plaintiff's Witnesses:**

      1.    Demetrios Vorgias

      2.    Rebecca Ward

      3.    Kelly Cornett

      4.    Tess Ish-Shalom

      5.    Mark Bauer

      6.    Ed Prasthofer

      7.    Douglas E. Coon

      8.    Judith Harvey

      9.    Caitlin C.D. Hill

      10.    Carlin Miller

      11.    Cynthia Morales

      12.    Scott Whitmer

      13.    Ben E. Kitchens

      14.    Sagar Vijapura

      15.    Brandon Isaacs

**B.    Defendant's Witnesses:**

      1.    Demetrios Vorgias

      2.    Michalyn Powers

      3.    Katina Rue

      4.    Caitlin Hill

      5.    David Bauman

      6.    Ragina Lancaster

      7.    Laura McClintock

      8.    Carlin Miller

      9.    Patrick Moran

**PRETRIAL ORDER # 25**

10.  Dominick Nguyen

11.  Ravneet Dhaliwal

12.  Shelley Lewis

Other than for rebuttal purposes, no witnesses may be called unless listed above.

VIII.    **<u>RELIEF SOUGHT</u>**

Injunctive relief, including reinstatement of Plaintiff, to the residency program at Community Health of Central Washington and/or monetary damages for unlawful discrimination, attorney's fees, costs, and punitive damages.

IX.    **<u>TRIAL</u>**

The parties estimate seven (7) days trial time. The parties stipulate and agree to the following: no stipulation reached by the parties. Proposed instructions and trial memoranda shall be filed in accordance with the Court's scheduling order. *See* ECF No. 89 and ECF No. 113.

X.    **<u>ACTIONS BY THE COURT</u>**

The Court has made the following rulings:

1.    The Court granted Defendant's motion to exclude portions of Plaintiff's expert's testimony and report. See ECF No. 70. The Court denied Defendant's request for an expert examination. See ECF No. 68.

2.    The Court denied cross-motions for summary judgment filed by both parties as to all claims. ECF No. 69. The Court also denied reconsideration. ECF No. 87.

3.    The Court made the following rulings on Plaintiff's Motion in Limine, ECF No. 97:

       a.    Request #1: **RESERVE RULING until the time of trial**

       b.    Request #2: **GRANT**

       c.    Request #3: **GRANT**

       d.    Request #4: **GRANT**

**PRETRIAL ORDER** # 26

   e.  Request #5: **RESERVE RULING until the time of trial**

   f.  Request #6: **GRANT**

  4.  The Court made the following rulings on Defendant's Motion in Limine, ECF No. 99:

   a.  Request #1: **RESERVE RULING until the time of trial**

   b.  Request #2: **RESERVE RULING until the time of trial**

   c.  Request #3: **RESERVE RULING until the time of trial**

   d.  Request #4: **DENY**

   e.  Request #5: **RESERVE RULING until the time of trial**

   f.  Request #6: **RESERVE RULING until the time of trial**

   g.  Request #7: **GRANT**

   h.  Request #8: **GRANT**

   i.  Request #9: **GRANT**

   j.  Request #10: **GRANT**

   k.  Request #11: **GRANT**

   l.  Request #12: **GRANT**

   m.  Request #13: **RESERVE RULING until the time of trial**

   n.  Request #14: **GRANT**

   o.  Request #15: **GRANT**

//
//
//
//
//
//
//
//
//

**PRETRIAL ORDER** # 27

It is **ORDERED** that the foregoing constitutes the Pretrial Order in the case and that, upon the filing hereof, all pleadings pass out of the case and are superseded by this Order. This Order may be amended by consent of the parties and approval by the Court or by the Court to prevent manifest injustice.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 9th day of September 2022.



Stanley A. Bastian
Chief United States District Judge

**PRETRIAL ORDER** # 28